### THE STATE OF MISSISSIPPI *v.* THE COMMERCIAL BANK OF MANCHESTER.

1. QUO WARRANTO : IF CORPORATION BE DIRECTLY PROCEEDED AGAINST, ITS EXISTENCE IS ADMITTED.—The State by proceeding directly against a corporation, by an information in the nature of a writ of *quo warranto*, impliedly admits the existence of the corporation, and it is unnecessary for the corporation in its plea, setting up its charter as the warrant for the exercise of the franchises mentioned in the information, to allege a performance of the conditions prescribed in the charter as precedent to the organization of the corporation.

2. QUO WARRANTO : CORPORATION : FORFEITURE OF CHARTER.—It is true that every accidental omission of duty, or accidental commission of an error by a corporation, will not be a cause of forfeiture of the franchises granted by its charter ; but, when the corporation deliberately abandons a salutary rule, prescribed by its charter for the benefit of the public, and substitutes another rule for the transaction of its business in violation of the terms of its charter, it will be a sufficient cause for forfeiture.

3. SAME: USURY, A CAUSE OF FORFEITURE.—A restriction contained in the charter of an incorporated bank, as to the rate of interest or discount which it may take upon loans, is a regulation intended for the benefit of the public, and its deliberate violation by the bank, will be a cause of forfeiture of its corporate franchises.

4. SAME: SALE OF ALL ITS ASSETS, A CAUSE OF FORFEITURE.—The sale by a bank of its property, so as to disable it from resuming its banking operations, which had been suspended, is a cause of forfeiture of its charter.

5. SAME: ABANDONMENT OF FRANCHISE: BY CORPORATION, CAUSE OF FORFEITURE. —It will be a violation of the charter of an incorporated bank, and a cause of forfeiture thereof, if the bank abandon the franchise of banking, and permit others to intrude upon and usurp its privileges in that respect, and issue, and put into circulation as money, notes or bills in the name of the bank.

6. SAME: SALE OF CHARTER IS A CAUSE OF FORFEITURE.—An incorporated bank has no authority to sell its charter and franchises to third persons, and if it do so, it is a cause of forfeiture.

7. SAME: FAILURE TO ELECT DIRECTORS; CAUSE OF FORFEITURE.—If an incorporated bank, whose charter provides for the election of directors annually, fail to elect a directory for five years, it will be a cause of forfeiture of its charter.

8. SAME: EFFECT OF A REDUCTION OF ITS CAPITAL STOCK.—By the charter of the Commercial Bank of Manchester, $100,000 of capital stock was required to be first subscribed and paid in, before an election of a directory, or the organization of the bank should take place; and it was also provided, that the circulation of the bank should not at any time exceed double the amount of capital paid in. Held, that after the bank had been duly organized, the subsequent withdrawal of the capital stock paid in, and its conversion to other uses, so as to reduce the amount thereof below $100,000, was no cause of a forfeiture of its charter, if the bank did not at any time put in circulation its issues exceeding double the amount of stock paid in and retained.

9. PLEADING: DUPLICITY.—Duplicity in pleading, consists in alleging for one single purpose or object, two or more distinct grounds of defence, when one of them would be as effectual in law as both or all; but mere surplusage, or that which is alleged by way of inducement, or for the purpose of giving importance to another fact, will not render the pleading double.

APPEAL from the Circuit Court of Yazoo county. Hon. E. G. Henry, judge.

This was an information in the nature of a writ of quo warranto, prosecuted in the Circuit Court of Yazoo county, by the district attorney of the Fifth Judicial District, on the relation of Morgan McAfee against the Commercial Bank of Manchester, to establish a forfeiture of its charter. The bank pleaded in the usual form to the information, that it enjoyed and exercised the privileges and franchises mentioned in the information, by virtue of an Act of the legislature of this State, passed on the 26th day of February, A. D. 1836,. entitled "An Act to establish the Commercial Bank of Manchester."

To this plea the State filed a general demurrer, which was overruled; the State then filed eight replications, in substance as follows:

1. That, although it is true that the legislature passed the Act referred to in defendant's plea, yet, by the passage thereof, the defendant was not created a body politic and corporate, and invested with the privileges and franchises mentioned in the information.

2. That said pretended bank, for more than six months last past,

has refused to loan money for periods of twelve months, at the rate of seven per centum per annum interest thereon; but said defendant, during the term aforesaid, has continually made loans of money, having twelve months and less to run to maturity, at the rate of ten, eleven, and twelve per centum per annum.

3. That, on the 17th day of February, A. D. 1851, said defendant surrendered its charter, and suspended all banking operations, and sold, assigned, and transferred perpetually so much of its capital, money, and property, of all descriptions, that it could not again resume the business of banking; that such suspension still continues, and said defendant is destitute of the means of carrying on banking operations in accordance with the terms of the charter.

4. That for the period of six months last past, before the filing of the information, the circulation of the said bank has exceeded double the amount of the capital stock paid in, and then actually remaining in possession of said bank, subject to the redemption of said circulation.

5. That, on the 17th day of February, A. D. 1851, said defendant surrendered its charter and the franchises of banking mentioned in defendant's plea, and withdrew all its capital stock, money, and effects, of all description, from said bank, and sold and disposed of the said money and property in perpetuity, and thereby became incapable of carrying on the business of banking in accordance with its charter; and in consequence of such incapacity, the defendant has, from the date aforesaid, continually abandoned the use of said franchise of banking, and has fraudulently permitted Shepherd Brown and Joseph H. Johnston to intrude upon and exercise the privilege of banking in said defendant's charter contained, and have fraudulently permitted said Brown and Johnston to issue a large amount of notes as money, and put the same in circulation, in the name of said bank, when the capital stock of said bank had been withdrawn and never returned.

6. That, on the 17th day of October, A. D. 1845, the said defendant, with the intention of never again resuming them, abandoned and surrendered all its privileges of banking, and sold and conveyed to John P. Bailey and others, as trustees for that purpose, all its capital, money, and property, of every description, with power to said trustees to take possession of the same, and sell and

assign the same, and after paying the debts of said defendant, expenses, &c., to distribute the balance, if any, among the stockholders of said bank, in proportion to the amount of stock held by each; and that said trustees immediately entered upon the duties of the trust, and continued to sell the property of said bank until the 17th day of February, A. D. 1851, when said trust having expired by its terms, the said defendant made a reassignment of all its property then remaining to said Smith and Bailey in perpetuity, and thereby forever withdrew all of the money, capital stock, and means of said bank from the business of banking; and the defendant thereby also empowered said Smith and Bailey to sell and convey the charter of said bank to any person whatsoever, who might wish to purchase the same, and to convey to said purchasers all the rights, and privileges, and franchises, of said bank; and defendant thereby empowered said Smith and Bailey to sell and convert into money all the property of said bank, and to distribute the proceeds, after paying the debts of the bank, among the stockholders; that said Smith and Bailey immediately thereafter entered upon the duties of the trust, and sold and disposed of all the property of said bank, and collected most, if not all the debts due said bank, which were collectable, and distributed the proceeds as directed by the trust-deed; and afterwards, in the year 1855, said Smith and Bailey sold and conveyed the charter of said bank, and all its franchises and privileges, to Shepherd Brown and Joseph H. Johnston, for the consideration of $5000; and thereupon said Brown and Johnston took possession of said charter, and without returning the capital stock and property previously withdrawn, entered upon the business of banking under said charter; and said Brown and Johnston, with the authority, knowledge, and consent of said bank, have unlawfully issued and put into circulation as money, in the name of said "Commercial Bank of Manchester," a large amount of notes and bills, and for six months last past, have continued to issue such notes and bills, to circulate as money, and have constantly exercised the franchise of banking under the fraudulent pretence of being the owners of the charter of said bank.

That for more than six months last past, the said defendant has put in circulation a large amount of notes to circulate as money, in the name of the Commercial Bank of Manchester, and exercised

all the franchises of banking, when in fact as much of the capital stock of said bank had been previously fraudulently withdrawn by said defendant from said bank, and converted to other uses, that there was not remaining in the possession and control of said bank the sum of one hundred thousand dollars of the capital stock of the bank in gold and silver and the notes of specie-paying banks, other than the notes of said Commercial Bank of Manchester.

8. That for five years last past, said defendant has totally neglected and refused to hold an annual election of directors of said bank, according to the terms of the charter, and that during that time no directors have been elected by said bank, and that said failure to elect a directory was not the result of casualty, but was designed by said defendant.

The defendant took issue on the 4th replication, and demurred to all the others. The defendant assigned for special causes of demurrer to 2d replication, that it was double; to the 3d, that it was double and argumentative; to the 5th, that it was double, argumentative, and repugnant; to the 6th, the same as to the 5th. The court sustained the demurrers to all the replications, and the State refusing to reply over, the cause was submitted upon the issue joined on the 4th replication, to a jury, who found a verdict for the defendant. The plaintiff's motion for a new trial being overruled, the State took a bill of exceptions and appealed to this court.

By the 1st section of the charter, it was enacted, " That a banking company shall be established at the town of Manchester, with a capital of two millions of dollars, which shall be divided into twenty thousand shares of one hundred dollars each; to be subscribed and paid for by individuals, companies, and corporations, in the manner hereinafter specified."

The 4th section provided, " That the subscribers to the capital stock of said company, their successors and assigns, shall be and they are hereby created a corporation and body politic, by the name and style of the Commercial Bank of Manchester," &c.

The 2d, 3d and 5th sections provided for the mode in which stock should be subscribed and also for the due organization of the bank. The 5th section also contained this provision, " That so soon as one hundred thousand dollars of stock so subscribed for,

shall be paid in, the subscribers therefor may proceed to the election of directors." It also provided that notice should be given of the election, by the commissioners appointed in the 2d section, and also, " that the election of directors shall be annual." The 17th section enacted, " That if by any casualty, any election should not take place at the time prescribed in the Act, it shall not amount to a forfeiture of the right herein granted, but the same shall be held thereafter, as may be prescribed by the directory."

The 6th section of the charter is as follows :

" That it shall be incumbent on said company to loan at least one-half of the amount of capital actually paid in by the stockholders, at periods of not less than twelve months time, and in sums nòt exceeding $4000, to any one individual or company, during any period of twelve months ; nor shall any discount be made by said company on business paper having twelve months or longer to run, for the benefit of any one individual or company, for a larger amount than $4000; and the rate of discount which said company is authorized to take on paper having twelve months or longer to run, is hereby declared to be eight per cent. per annum ; and on notes having less than twelve months to run, not exceeding seven per cent. per annum; provided, however, that nothing in this section shall be so construed, as to prevent said company from loaning, at their discretion, to any individual who may have been accommodated to the extent of $4000, as aforesaid, at terms short of twelve months."

The 14th section provides, " That the circulation of the bank shall not at any time exceed double the amount of capital paid in." .

*John D. Freeman,* for appellant.

The district attorney, on the affidavit of Morgan McAfee, filed a complaint in the Circuit Court, against the defendants, charging them with usurping the privileges and franchise of incorporated banks, for the space of twelve months last past, &c., without any warrant of authority, &c. Under this complaint the statutory process of subpœna and injunction issued, and was served on the officers of defendants.

The defendants appeared and admitted the exercise of banking

privileges, and say they hold and exercise the same by virtue of an Act of the legislature of the 26th February, 1836, entitled "An Act to establish the Commercial Bank of Manchester," whereby it was created a body politic and corporate, chartered as such, and invested with all the liberties, privileges, and franchises aforesaid, and whereby the same is now rightfully held, enjoyed, and exercised. To this plea the district attorney demurred, and the demurrer was overruled, and this judgment of the court is the first error assigned.

1st. The plea of the defendant does not set forth the charter, nor any portion of the same; nor does it aver a compliance, on the part of defendants, with any of the conditions, precedent or subsequent, set forth in the charter.

The charter does not authorize the defendants to exercise banking privileges without performing any acts of organization, or procuring any capital to operate upon, but provides that the capital of the bank shall be $2,000,000, divided into twenty thousand shares of $100 each, to be subscribed and paid for by individuals, companies, &c.

2d. That books of subscription shall be opened at Manchester, on the second Monday in April next, under the superintendence of J. J. Hughes, &c., . . . . . . and that no one shall subscribe for more than fifty shares of stock, in any one day for the thirty days that the books remain open.

3d. That the subscribers shall pay to said commissioners, at the time of subscribing, $20 for each share subscribed, and the remainder in four equal annual instalments.

4th. That the subscribers for said stock are hereby incorporated, &c., and given the powers of banking.

5th. That so soon as $100,000 of the stock so subscribed for, shall be paid in, the subscribers therefor may proceed to the election of directors; and when said amount is paid in, the said commissioners (who opened the books) are required to convene the stockholders by ten days' notice, with a view to such election. That the number of directors shall be eleven, who shall annually choose a president of their number, and the election of directors shall be annual.

These and many other provisions are contained in the charter of

this *monied* corporation, to secure a sound circulating paper medium of currency and exchange.

It is not sufficient, on a charge of usurpation, to state that the incumbent was qualified at the time of his appointment; and then rely on the presumption of the continuance of the qualifications, until the loss of them is shown. Ang. & Ames on Corp. 786, 787, sect. 756; *State* v. *Buchee*, 15 Ohio, 723.

The plea, therefore, that the defendants were incorporated by the Act of the Legislature of 1836, is no defence whatever to this action. They are charged with usurping the powers of a banking corporation. The information does not admit that they are incorporated, but denies it. They say they were incorporated in 1836, but they do not say that they ever organized a bank under their act of incorporation, in compliance with the terms of their charter. Hutch. Code. Banks.

An information in the nature of a writ of quo warranto, need not show a title in the People to have the particular franchise exercised, but calls on the intruder to show by what authority he claims it; and if the title set up be incomplete, the People are entitled to judgment. 2 Kyd on Corp. 399; 4 Burr. R. 2146, 2147; *People* v. *Utica Insurance Company*, 15 Johns. 388; (Spencer, Justice), Ang. & Ames, Corp. 786, 787. The plea in bar should set out the defendants' title at length. *Reg.* v. *Blagden*, Gilb. Cas. 145; 4 Cowen, 113. And where the title set forth is bad, but the user confessed, this amounts to a confession of the usurpation. Ibid. 113, 114, 115, 116, 117, 118; Comyn's Dig. Quo Warranto. The defendant must set forth so much of the charter as he relies upon. Ang. & Ames on Corp. 788.

### REPLICATIONS, AND DEMURRERS THERETO.

The first replication admits the passage of the Act of February, 1836, to establish the bank, as stated in the plea, but denies that in and by the passage of said Act said defendant was created a body politic and corporate, &c., as is erroneously charged in said plea. To this replication there is a demurrer, which is sustained by the court.

The causes of demurrer are, 1st. That the replication alleges

matter of law and not of fact; and 2d. That it denies the existence of the corporation, after having admitted it by declaring against it in its corporate name.

Neither of these grounds are tenable. The information charges them with usurpation of their franchise. The charter of the bank is relied upon by defendants without showing by their plea any acts of their own, under that charter, whereby they become entitled to the use of the franchise granted thereby. The plea does not show a performance of the conditions precedent to the use of the charter, but declares that the defendants were created a body politic and corporate by the passage of that Act. The replication denies this allegation; it takes issue on the facts stated in the plea; and if the demurrer to the replication be sustained, this demurrer reaches back to the plea, and overrules the same.

The fact that the information declares against defendant by its corporate name, is no admission of a legal existence of the corporation. On the contrary, the information in terms denies its legal existence. 6 Cowen, 217. It does not treat it as an incorporated bank, but as an usurper by that name. In the case of the Utica Insurance Company, 15 Johnson, 388, the Company with its capital stock was in existence before the passage of its charter, and the charter took effect from its passage; they had no conditions precedent to perform; they were declared against by their corporate name; they pleaded their charter: this was held to be insufficient, and a judgment of ouster was rendered against them, notwithstanding the charter made it a corporation *in presenti.*

In the case of *The People* v. *The Manhattan Company,* 9 Wend. 351, the charter created a corporation *in presenti.* Hence these authorities are not in point.

The second replication charges, that for more than six months last past, the said pretended bank has refused to loan money, on good and sufficient security offered, at the rate of seven per cent. per annum, but has continually made loans at the rates of ten, eleven, and twelve per cent. per annum.

By the charter the rate of interest on paper running twelve months or more is eight per cent., and paper less than twelve months seven per cent. See Sect. 6 of Charter.

This replication is said to be double. It is a substantial charge

of usury, in violation of its charter. It charges a refusal to loan, at the rates prescribed in the charter, and a loaning, at greater rates. The two facts constitute but one act in violation of the charter, and hence the replication is not double. A refusal to loan, would not of itself constitute usury or a violation of charter, because the bank may properly exercise a discretion as to its loans, but a refusal to loan at chartered rates and loaning at higher rates, completes the offence.

A replication may put in issue several distinct facts, when they amount to one connected proposition, and may contain several distinct answers to different parts of a plea divisible in its nature. 2 Saunds. Pl. and Ev. 775.

The third replication charges, that the said pretended bank, on the 17th of February, 1851, surrendered its charter and suspended all banking operations, and sold and assigned and transferred perpetually, so much of their capital, money, and property of all descriptions, that it could not again resume the business of banking, and continued in such suspension, and destitution of the means of carrying on banking operations, up to the time of filing this information.

This replication is demurred to, for duplicity, and because argumentative and otherwise defective.

The facts stated in the replication, when taken together, constitute a non-user and abandonment of the charter from the year 1851, February 17, until April, 1856, being more than six years, and show also an incapacity to resume banking operations. As all the facts constitute only an abandonment of the charter by surrender and disposition of its assets, it cannot be said to be double.

A replication may put in issue several facts, when they amount to only one connected proposition. 1 Chitty Pl. 641; *Service* v. *Heermance*, 2 Johns. Rep. 96; 3 Johns. 314; Caines' Rep. 160. But the demurrer is bad because it does not point out the particular defect. 1 Chitty Pl. 692; 2 Saunds. Plead. and Ev. 776.

The plea shows a continued suspension of all its corporate franchises, a failure to perform the implied conditions of the charter for six years, and an incapacity to resume, and this amounts to a non-user, and is cause of forfeiture. *State* v. *Coml. Bk. of Man-*

chester, 13 S. & M. 579, 580; People v. Bank of Hudson, 6 Cowen, 218.

On the fourth replication issue was taken, and found for the defendant. On this issue the district attorney moved for a new trial, which was overruled; and the district attorney filed his bill of exceptions, setting out all the evidence, from which it appears, that about the 1st of November, 1855, or soon thereafter, there was paid into the bank, of capital stock, $102,500, and the bank never had that amount in circulation.

The bank was chartered on the 26th of February, 1836. The books of subscription were to be opened on the second Monday of April, 1836, and remain open for thirty days; and when $100,000 was paid in, the stockholders might convene and organize. From the testimony, it appears that no capital stock was paid in until the 1st November, 1855, being nearly twenty years after the time appointed by the charter.

The fifth replication charges, that on the 17th day of February, 1851, the corporation surrendered its charter and the franchise of banking, claimed by defendants' plea, and withdrew all its capital stock, money, and effects, from said bank, and sold and disposed of all its money and property in perpetuity, and thereby became incapable of carrying on the business of banking, &c.; and in consequence of said incapacity, since said 17th of February, 1851, has continually abandoned the use of said franchise of banking, and fraudulently permitted Shepherd Brown and Joseph Johnston to intrude upon, and exercise the privilege of banking in said charter contained, and fraudulently permitted said Brown and Johnston to issue a large amount of notes as money, and to put the same in circulation in the name of said bank, when the capital stock had been withdrawn.

To this replication there are the same causes of demurrer, but no defects are pointed out under either assignment.

The replication charges the commission of a fraud on the public, by the withdrawal of all its capital stock and money, &c., and allowing strangers to issue paper, and put the same in circulation in their name, without any capital to redeem the same.

As all the facts stated in the replication are connected parts of the same fraud, the replication is neither double nor argumentative.

See previous authorities. 2 Johnson, 96; 3 Ib. 315. The duplicity is not specially pointed out; facts show misuser.

The sixth replication charges, that in October, 1845, the said defendant abandoned and surrendered all its privileges of banking, with the intention of never again resuming them, and sold, conveyed, and delivered to Bailey and Smith and others, as trustees for that purpose, all their capital, money, and property of every description, with power to said trustees to enter upon possession, and sell all of said property, and after paying their debts and expenses, to divide the balance, if any, among the stockholders, according to their shares. That said trustees took possession of said property, and held and executed said trust, until February, 1851, when the same expired by limitation, and when defendant made another assignment, in perpetuity, to John P. Smith and Alexander Smith, and thereby forever withdrew all their property, and money, and means, from the business of banking; and authorized said Smith and Bailey to sell, convey, and deliver the charter of said bank, with all its franchises, to any person or persons, or company; and also to sell and deliver all their property, and convert the same into money, and distribute the proceeds, after payment of all debts and expenses, to the several stockholders; and that in pursuance of said last assignment, the said trustees immediately entered upon their duties, and sold and disposed of all said property, and collected the money due, and distributed the proceeds to the several stockholders; and subsequently, in the year 1855, sold and conveyed the charter of the bank, and its franchises, and the use thereof, to Shepherd Brown and Joseph Johnston, for the consideration of $5000; and thereupon, said Brown and Johnston took possession of the charter of said bank, without returning the capital stock previously withdrawn, and entered upon the business of banking; and with the authority, consent, and knowledge of said bank, said Brown and Johnston have unlawfully issued, and put into circulation, as money, in the name of said bank, a large amount of notes and bills, and for six months last past have exercised the franchises of banking, under the fraudulent pretence of being the owners of the charter of said bank.

This replication is demurred to, for the same reasons as the others.

We insist, that the facts stated, amount to a misuser and abandonment of the charter, and these work a forfeiture.

In addition to the authorities heretofore relied on, it was held in the case of *Orthen* v. *Canal Bank of Vicksburg,* that the franchises of a bank were not the subject of sale, and that such sale would be a cause of forfeiture.

The same has been decided in North Carolina.    5 Iredell, 307.

The seventh replication charges, that defendant, for six months last past, has put in circulation a large amount of notes as money, in the name of said bank, and exercised all the franchises of banking, when in fact, so much of the capital stock had been previously withdrawn, and converted to other uses, that there was not remaining in the possession and control of said bank, the sum of $100,000 of the capital stock of said bank, &c.

This is also demurred to.

The charter provides, that the bank shall not go into operation until the sum of $100,000 is paid, and hence we insist that if they reduce their capital below that amount, it works a forfeiture.

The eighth replication charges, that for five years last past they have neglected and refused to hold an annual election for directors, according to the terms of said charter, and that during the time aforesaid, no directors have been elected, and the failure was not the result of casualty, but of design on the part of defendant.

The charter of the bank provides, that the election of directors shall be annual (sect. 5); but that if by any casualty any election shall not take place at the time prescribed by this Act, it shall not amount to a forfeiture, but the same shall be held thereafter, as shall be prescribed by the directors (sect. 17).

The charge is, that the failure to elect was not by casualty but by design, and consequently it works a forfeiture.

*Geo. S. & Wm. S. Yerger,* for appellee.

This case came up from Yazoo county.   It was on information in the nature of a quo warranto filed against the bank, to know by what authority it exercised the franchise of being a banking corporation, &c.

To this the defendant in the plea replies, that it uses, exercises, and enjoys such franchises, by virtue of a certain Act of the Legis-

lature of the State of Mississippi, passed on the 26th day of February, 1836, chartering such bank with such privileges, &c.

This plea was demurred to, but the demurrer was overruled by the court.

The plea is good. It sets out the Act of the legislature incorporating the bank, and that by virtue of that Act, it exercises and uses the franchises. This is sufficient. The charter and user under it are evidence of its existence, and of the performance of all requirements. Angell & Ames on Corp. sect. 635.

But the information against it in its corporate name admits it. Angell & Ames on Corp. sect. 756; 15 Wendell, 125; 3 Pike, 573.

Again, the legislature has, by public laws, which must be noticed without pleading, admitted its existence. See Laws of Mississippi, from 1824–1838, p. 667–847.

The first replication is bad, because it is no answer to the plea. It does not deny the user under the charter, but says the Act alone does not make it a corporation. If this were so, the user averred in the plea, shows that the charter was accepted, and this user is evidence of its existence.

Evidence of user is sufficient under a plea of nul tiel corporation. Angell & Ames on Corp. 635.

But proceeding against it, is an admission of its existence. See authorities before cited. And it cannot put in issue what has been admitted by the previous pleading. See Starkie on Evidence, title Admission.

2d. The second replication is, that the bank was guilty of usury. This is no cause of forfeiture. State v. Commercial Bank, 10 Ohio, 535; Commercial Bank v. Nolan, 7 Howard Miss. 508.

3d. The third replication is bad. It is double. See Gould on Pleading, ch. 8, sec. 18, 19.

It says it surrendered its charter on the 17th day of February, 1851. The surrender to be effectual must be averred to have been accepted by the State. 1 Swan (Tenn.) 164; 24 Pick. 49; 4 Blackf. 268; 7 Paige Ch. 294; 6 Howard (Miss.) 681; 2 Doug. (Mich.) 530.

It then avers (and this notwithstanding it avers a surrender) that it suspended all banking operations, &c., sold and assigned its property, capital, &c.; that it could not again resume banking busi-

ness, and has continued in such suspension to the time of filing the information.

Suspension is inconsistent with dissolution : a surrender dissolves it.   The replication is inconsistent.

But the latter part is contrary to the express admission in the information.   The information states, that it was then, to wit, at the time of the filing, exercising banking operations, issuing notes, discounting, &c.   This part of the replication seeks to put in issue what was admitted by the State on record.   This cannot be done.

The replication is therefore bad as to part, and therefore bad as to all.   Chitty's Plead. 478, 579.

4th. The fifth replication is bad.   The same objection exists as to this that does to the third.   The whole of this is an argument rather than a statement of facts.   See Chitty as to argumentative pleas.

It is clearly bad as to part, and therefore bad as to the whole.

It avers the bank surrendered its charter.   It does not aver acceptance of the surrender.

But if it was good, the surrender operates as a dissolution ; and there can be no proceeding against it by quo warranto, for it does not exist; but the information admits its existence as a bank or corporation.   The plea is contradictory to the information, and thereby bad.

But again, if it did not exist, and Brown and Johnston were banking under its charter, which did not exist, the proceeding should have been directed against them as natural persons.

5th. The sixth replication says it abandoned and surrendered its banking privileges, and sold its property and assets, &c.   This averment is inconsistent with the information, which admits its existence up to the time of filing the information.

It is again bad, because it avers that the directors made conveyances of the property to divide amongst the stockholders, and the stockholders sold the charter and banking privileges to Brown and Johnston, or, in other words, they sold their stock, &c.   This they had a right to do.   This plea was put in issue in the last information, and decided by the court to be bad.   See Opinion Book.

Besides, the replication is argumentative, and attempts to put in

issue several distinct matters, each of which would form a separate issue.

6th. The seventh replication is bad. It in substance avers that the bank, not the directors, withdrew from itself, fraudulently, so much of its capital stock, &c., that there was not remaining in its vaults, and subject to its control, $100,000 of its capital stock in gold and silver, or notes of other banks, and that it put out a large amount of notes to circulate as money. It does not aver, that the notes out, were double the amount of the capital stock paid in.

There might have been $99,000 in silver in the vaults, and $150,000 notes issued, which the bank had a right to do.

But there is nothing in the charter requiring the bank to keep always on hand $100,000 capital stock in gold and silver, or the notes of other specie-paying banks.

The charter authorizes the issuing of notes, and requires them to be paid in gold and silver. The whole amount of capital may be drawn to pay its notes.

But again, when the capital is paid in, they have a right to invest it in available securities. They have a right to use it as they please, so that they redeem their notes in specie.

It is not averred that the notes of the bank are not redeemed in specie. This plea is therefore bad.

7th. The eighth replication is bad. The particular section now under consideration does not repeal the common law; it had reference to the failure to elect by reason of some "casualty," and cannot, by any rule of construction, be made to apply to cases not thus provided for, or which arose from another cause; for it is a maxim of law and a familiar rule of construction, that the "mention of one thing expressly excludes the other." Co. Litt. 210.

Besides, statutes abolishing the common law must be construed strictly, and there must be negative words, or a direct conflict, to affect the common law. 3 Bibb. 518.

In the above section both of these features are absent.

The legislature may have thought, that in cases not provided for, that a forfeiture would result from a failure to elect at the time prescribed, and even may have desired that such should be the case, yet courts cannot supply defective enactments by an attempt to

carry out fully the purposes which may be supposed to have occasioned those enactments.    27 Maine, 285.

The intention of the legislature not expressed in the Act, affords no legitimate ground to control the construction of it.    3 Zabriskie, 180.

But a failure to elect at the prescribed time does not work a forfeiture.    The officers are not an integral portion of the corporation. They serve only in the capacity of agents for the stockholders.  See 1 How. (Miss.) 478; 10 Yerger, 218; 3 Watts, 46; 14 Pick. 63; 3 Penn. State Rep. 147; 8 Cush. (Mass.) 94, 95; 2 Cowen, 447; 2 Doug. (Mich.) 140, 141.

As to the motion for a new trial, it was properly refused by the court, as the evidence set forth in the record shows that the circulation has not exceeded double the capital paid in.

*R. S. Holt,* on same side.

This was a proceeding in the nature of a quo warranto, commenced in the Circuit Court of Yazoo county, upon the affidavit of Morgan McAfee, charging the defendant with a violation of its charter.    To the information the defendant pleaded her charter in the usual form, and the plaintiff filed a general demurrer to the plea, which was by the court overruled, with leave to reply over.

The only objection to the plea insisted on below, was that it did not allege a compliance with the conditions precedent to the complete investiture of the corporation with its franchises, prescribed in the Act of incorporation, and we suppose the same point will be made known.    The objection to the plea, however, was plainly unfounded.

The information is against the corporation *by name,* and it is fully and firmly established as law, that in such case the corporation need not allege nor prove such a compliance.

Its full and perfect original existence as a corporation is admitted by such an information.    6 S. & M. 311, 599; 9 Wend. R. 351, 378; 15 Wend. R. 125.

I shall now notice the replications.

I. This replication is defective.

1. Because it seeks to put in issue the original existence of the corporation, which, upon the authorities cited above, had been be-

fore conclusively admitted, by the information against the corporation by its corporate name. This could not be done without confounding all rules and principles of pleading.

2. Because it seeks to raise a mere question of law, as to whether the legal effect of the *mere passage* of the Act of incorporation was to invest it with the corporate franchises.

3. Because it is not responsive to the substance of the plea, which consisted in the averment, that the corporation was created and came into full legal existence, but it aims to make an issue upon the mere *verbiage* of the plea, without regard to its manifest meaning, and an issue, which when made would be immaterial to the merits of the defence.

II. The second replication is defective, because it alleges two distinct violations of charter, and causes of forfeiture.

Under no system of pleading can two distinct issues of fact be tendered in the same pleading. If two were admissible, so any larger number would be, and that certainty and simplicity of issues aimed at in all pleadings and essential under all systems to the administration of justice, would become impossible.

The first charge, that the defendant refused to lend money at a rate, and under circumstances prescribed in the charter; and the second, that the defendant did lend money at a specified unlawful rate of interest, are distinct, and would require distinct answers, forming distinct issues, each of which would require trial and determination, and on which different judgments might be necessary.

III. The third replication presents the same with additional defects. It is only necessary to point them out.

1. It is alleged that on the 17th of February, 1851, the corporation *surrendered* its charter. This is of course a full answer to the plea.

2. It is alleged, that the defendant suspended business and assigned and transferred perpetually so much of its capital money, &c., as to be destitute of the means of resuming. These two answers open up two distinct fields of controversy, and present points from which the subsequent pleadings on each would widely diverge.

One might be traversed, the other confessed and avoided, or both might be confessed and different matters of avoidance alleged

as to each, and so on, until the pleadings would present a scene of inextricable confusion.

3. But these charges are not only distinct answers to the plea, but they are inconsistent. If the charter was surrendered, then it could not be afterwards forfeited.

4. If the second allegation is designed to show that the first is true, it is not so framed, and even if it were so viewed, it would present the case of an argumentative plea.

5. But if the second allegation be regarded as argumentative, it is logically insufficient to establish the surrender. It might show a forfeiture, but not a surrender, which is distinct from a forfeiture.

V. The fifth replication contains, not simply two, but several answers to the plea.

1. It alleges a surrender by the defendant of its franchises and charter.

2. The withdrawal of the capital stock, and sale of its property, &c., becoming thereby incapable of carrying on the business of banking according to the charter, &c.

3. The act of fraudulently permitting Brown and Johnston to intrude upon and exercise the corporate franchises.

Each of these allegations raises a different issue, each answers the plea, and each requires a different answer. To the first the defendant would rejoin by a traverse, by the plea of readjudication, and an estoppel of the State, from subsequent legislation recognizing the existence of the corporation.

The second the defendant would in like manner answer in different ways, and so the third.

This sufficiently illustrates the defects of this replication.

VI. The sixth replication exhibits all the defects pointed out in the fifth, but in a yet more flagrant form and degree.

It charges not simply two, but six or seven different acts of forfeiture, requiring as many answers, and raising as many issues of fact.

VII. The seventh replication is defective in substance, and is demurred to generally.

The charter does not require the bank to keep on hand one hundred thousand dollars in gold and silver, and the notes of specie-paying banks, as the pleader seems to imagine. The charter

requires that this amount should be originally paid in, but here the requirement stops.

VIII. The eighth replication is founded on a misapprehension of the legal meaning and effect of the seventeenth section of the Act of incorporation, which provides, " that if, by any casualty, any election should not take place at the time prescribed by this Act, it shall not amount to a forfeiture of the rights hereby granted; but the same shall be held thereafter, as may be prescribed by the directory." The replication alleges a failure to elect directors, and that this failure did not result from " casualty," but " design."

This section, providing in express terms for one exigency, and limited by its language to that, cannot certainly be construed as negatively providing for another contingency variant from the first. It plainly prescribes the rule in case of failure to elect from casualty, but is silent as to the legal consequences of failure to elect from other causes.

It leaves this case to be controlled by pre-existing laws. And the authorities upon the point clearly show, that a failure to elect officers of a corporation at the appointed time, does not work a forfeiture upon any general principle applicable to the subject. Ang. & Ames on Corp. 655; 5 John. Ch. R. 377; 9 John. R. 147, 149.

From this view of the questions presented by the record, we think the judgment below should be affirmed.

*George B. Wilkinson,* on same side.

The court below certainly committed no error in overruling the demurrer to the plea of the bank, justifying under its charter. 15 Wend. 125; 6 S. & M. 311, 599.

The court were right in overruling the demurrer to this plea, as it was a full answer to the charge, and so settled by this court.

The first replication of the State we think faulty. If pleaded as matter of fact, it is new matter, and should not have concluded to the country, but should have concluded with a verification. If pleaded as matter of law, it is bad; a traverse must not be taken on matter of law. Steph. 232, 254.

The second replication is double, presenting various grounds of forfeiture. So with the third and fourth; they are argumentative. Stephen, 220, 292, 426, 461, 464.

The fifth replication, with the accumulated defects of the others, is repugnant, and pleads evidence and law. See Stephen, 387, 420, 421, 447. There is a glaring defect in the whole seven replications demurred to. There is, in the whole batch, a striking disregard of all the recognized rules of pleading; and, if recognized by the courts, such a practice will destroy everything of conciseness and certainty in pleading, and draw the courts into unending confusion, and they will have their juries investigating questions of law, and the court the facts.

Upon the validity of the eighth replication, we refer to 9 John. Rep. 157; 1 How. 191, 192.

FISHER, J., delivered the opinion of the court.

This was a proceeding in the nature of a writ of quo warranto, commenced in the Circuit Court of Yazoo county, against the Commercial Bank of Manchester, with a view of having a judgment of forfeiture of its charter declared.

The information being against the corporation, by its corporate name, the defendant appeared, and pleaded the charter granted by an Act of the legislature, on the 26th day of February, 1836. The district attorney demurred to this plea, on the ground that it omitted to aver a performance of those acts, which were required to be performed, before the corporation could be organized, or have a legal existence.

The court below overruled the demurrer; and this is the first error assigned.

As already remarked, the information is against the corporation, and not against individuals, alleged to have usurped the franchises, granted by the charter to be exercised by the corporation alone, when completely organized; and whatever the rule might be in the latter case, it is certain that it can have no application to the case at bar, for the obvious reason that it is the corporation (and not individuals), that is alleged to have been guilty of the several acts of usurpation specified in the pleading on behalf of the State; and if it be true that the corporation never had a legal existence, it must follow, as a natural consequence, that it could neither do wrong nor omit to perform a duty. That which never existed cannot be the subject of judicial investigation, for the reason, that being in-

capable of action, it can neither be commanded by the law, or operated upon by a judicial sentence; and hence, to sustain the position assumed by the counsel representing the prosecution, would be equivalent to saying, that the prosecution was groundless. But the rule on this subject is a familiar one, that by proceeding directly against the corporation, the State has admitted that the corporation was in existence, and what is thus admitted cannot afterwards be controverted. The rule is, that a party is always bound by the admissions made in his own pleadings, and it is immaterial whether these admissions are expressly made, or arise from necessary implication.

But we do not deem this point of sufficient importance to dwell upon it; and it is therefore dismissed with the remark, that the court below committed no error in overruling the demurrer.

The demurrer being disposed of, the district attorney filed sundry replications to the plea, all of which will be noticed in regular order.

The first presents in substance the same point as that presented by the demurrer to the plea, and does not, therefore, require special notice.

The second replication alleges, that the bank, for more than six months last past (being the date of the information), had refused to loan money, for periods of twelve months and less, on good and sufficient security offered therefor, at the rate of seven per cent. per annum; but that she had, during the same term, continually made loans, having twelve months and less to run to maturity, and charged and received on account of said loans, at the rate of ten, eleven, and twelve per cent. interest per annum. To this replication, as well as all the others, except the fourth, the counsel for the bank demurred, and the court below having sustained the several demurrers, the question is, whether the replications set forth sufficient grounds or causes of forfeiture of the charter of the bank, and whether the matters thus alleged are well pleaded. To return therefore to the replication under consideration. It is assigned as a cause of special demurrer, that the replication is double, because, as alleged, it sets forth two distinct grounds of forfeiture; and as cause of general demurrer, that the matter pleaded presents no cause of forfeiture. "Duplicity in pleading consists in alleging, for one single purpose or object, two or more distinct grounds of complaint or

defence, when one of them would be as effectual in law, as both or all." Gould on Pleading, p. 419. By which must be understood, that each ground presents a separate and distinct cause of action, or of defence. That which is mere surplusage cannot make a pleading double, because the matter is not issuable. It requires no answer. Nor does a fact alleged by way of inducement, or for the purpose of giving importance to another fact, render a pleading double, for the reason, "that when there is a sufficient answer to the main fact alleged, it is also an answer to the inducement, or introductory matter." This brings us to the point presented by the demurrer. The charge is, that the bank refused, during a certain period, to make loans at seven per cent.; but made loans, during the same period, at ten, eleven, and twelve per cent. interest per annum. There is nothing either in the general law of the State, or in the charter, compelling the bank to make loans at seven per cent. interest per annum. There is, however, a provision in the charter, requiring the bank "to loan at least one-half of the amount of the capital stock actually paid in, at periods of not less than twelve months, in sums not exceeding four thousand dollars, to any one individual or company," at a discount of eight per cent. per annum. But as to the other half of the capital the charter is silent, at least there is nothing compelling the bank to loan it; but if the bank should, in the exercise of its discretion, elect to make loans, based upon the other half of the capital stock, and if such loans should have less than twelve months to run to maturity, the bank is restricted by an express provision of the charter to a discount of seven per cent. per annum. But it being merely a matter of discretion with the bank to make such loans or to decline them, suppose issue were taken upon this part of the replication, and found in favor of the State, it would result in nothing, because it would not establish a violation of the charter or of a legal duty, and there would consequently be no law which the court could apply to the fact established in pronouncing judgment. The court can only apply the law to the fact ascertained, and if there be no law applicable to the fact, there can of course be no judgment of the court. The fact does not make the law. It can only suggest the law, or call into action the law applicable to it; and hence, if there be no law applicable to the case, there can be no investiga-

tion of the fact, because the parties would be left in the same situation after the trial, that they were in before going into it. Thus viewing this part of the replication, we are of opinion, that the fact alleged is merely inducement, or introductory to the main fact alleged, to wit, that the bank made loans, for the space of six months, at ten, eleven, and twelve per cent. per annum; and this brings us to the consideration of the replication, as upon general demurrer.

The bank has pleaded her charter, and in her defence has elected to stand upon it, as indeed she could not do otherwise. The question therefore is, does she, by confessing this replication, at the same time show that her action has been consistent with that law, which was prescribed for her government in the particular transactions when she was created a body politic? While it is true that it is not every accidental omission of a duty, or accidental commission of an error, that will be cause of forfeiture, yet this is very different from a deliberate abandonment of a salutary rule prescribed by the charter, and the substitution of another rule for the transaction of business, where it is manifest that the substituted rule which had regulated the course of business for the space of six months, had, and would if continued, defeat one of the primary objects of the legislature in granting the charter, that of furnishing, to a portion of the community, a currency at a cheap rate of discount. The bank being allowed to issue and put into circulation bills to pass as money, to double the amount of her capital stock actually paid in, it was but reasonable that in consideration of the ·privilege thus granted, there should be a restriction imposed as to the rate of discount to be received by the bank. The same law which gave her existence, imposed the restriction and prescribed to her certain rules of action, which must be regarded as so many conditions annexed to the grant, and as tantamount to saying to the bank: "You are now endowed with certain rights and privileges, which you can exercise and enjoy during the period specified in the charter, upon condition that you act according to the rules therein prescribed." The rule prescribed as applicable to the case before us is, that the bank shall not take exceeding seven per cent. discount per annum on notes having less than twelve months to run to maturity. This rule is the law, which must govern the case before us, and the replication alleging a course of business perse-

vered in for at least six months, in palpable violation of this rule, presents, in our opinion, a good cause of forfeiture.   Suppose we should hold otherwise, what would the effect of such holding be, but a license to the bank to establish for herself a rule, which if it had even been suggested, would have been deemed sufficient for the legislature, having a due regard to the public interest, to have refused the charter.   Having the right to issue bills to double the amount of her capital stock paid, it was, even at seven per cent. discount, in her power to make fourteen per cent. per annum on the money actually invested; but under her own rule, this would be increased from fourteen to twenty, or to twenty-four per cent. per annum, and thus defeating one of the very objects sought to be accomplished by the legislature, that of benefiting the community, by allowing this privilege to the bank, of making her circulation twice the amount of her capital; for we must presume all legislation, which is not strictly of a private nature, is intended for the benefit of the public, whether it so proves or not, in point of fact. Under the rule however, established by the bank, this benefit, or supposed benefit to the public, is converted into an evil, oppressive to every person dealing with the bank, saying nothing as to the violation of the laws of the State, regulating the rate of interest in such cases.

We are however cited to authorities supposed to be in opposition to this view of the law.   The court, in the case of the *State of Ohio* v. *The Com. Bank et al.,* 10 Ohio R. p. 540, hold that usury, in making a contract by the bank, is not a cause of forfeiture of the franchise, at least such appears to be the conclusion to which the court seem to have arrived on this branch of the case then before them.   They first say that the charter contains no restriction as to the rate of interest, and that the bank was therefore like a natural person, only restricted by the general law in this respect; and that, having the power to make the contract, it was valid, as in case of a natural person, to the extent that it was not by the law, declared void.   They accordingly held, that the taking of an illegal rate of interest was not a ground of forfeiture.

Again, that even if the charter contained a restriction as to the rate of interest to be taken, it would be no ground of forfeiture, because they say it would be a case, where the contract would be

void for want of power to make it; and that this attempt to do what the corporation was unable to do, would not destroy its power to do what it might lawfully do. This reasoning, however plausible it may seem, wholly fails to meet the point. The bank certainly has the power to make contracts to loan her money; but in doing so, the question is not whether the contract is valid or void, but whether the bank, by the exactions she has thought proper to make, has violated some one of the fundamental rules prescribed by her charter. It is not necessary, at this time, to pass upon the validity of the contract, but merely to ascertain what has been violated, and the consequence which must follow such violation.

The question is, whether a corporation, having only such powers as are conferred by its charter, and such others as are merely incidental to the granted powers, may with impunity, disregard a plain and palpable rule prescribed for its action in a particular case, and adopt at pleasure a different rule, which, if persevered in, must defeat the very object contemplated by the charter. But the answer to the authority may be given in a few words: whenever the corporation confesses, as in this case, that the act was done, under color of the authority conferred by the charter, it will not, in a proceeding of this kind, be permitted to deny its authority to act, for this is the very gist of the charge, that it has done what it was not permitted to do under the charter; and it is difficult, under the reasoning of the court, to see how a corporation could ever be proceeded against for doing acts in violation of its charter, unless the act was one of omission of duty, and not of commission of a wrong, for if it can take the ground, in one case, and say that it is true the act was done as alleged, but having no power to do the act, or to perform it in the particular mode alleged, why may it not take this ground in every case?

If this is not the proposition established by the authority, it is certainly difficult to understand what was really intended.

Dismissing the further investigation of this point, we only deem it necessary to remark, that we are of opinion that the court below erred in sustaining the demurrer.

The third replication sets forth that the bank, in 1851, surrendered her charter, and had, by selling her property, disabled herself, so that she could not again resume banking; and finally, that

she had ever since, continued in a state of suspension, &c. This replication is bad for duplicity; for although the facts are defectively pleaded, yet two of them, if well pleaded, would constitute each a ground of forfeiture. We therefore see no error in sustaining the demurrer to this replication.

The fourth replication presents an issue of fact, which was tried by the jury, and found for the bank.

The fifth replication is bad for duplicity, and the reasons already assigned dispose of it.

The sixth replication is also bad for duplicity, and requires no special notice. It is almost unnecessary to state, that the trustees could not sell the charter of the bank, nor could the corporation itself make such sale.

The seventh replication fails to allege that the bank had put in circulation its issues, to more than double the amount of its capital stock paid in, and is therefore defective.

The eighth replication is, in our opinion, good. The corporation was bound under its charter to hold an election annually for directors, or to show a valid reason for its failure to do so. Not having held an election for five years, the presumption would be, that the failure arose from a design not to hold such election, and not from casualty, as contemplated by the charter, as no casualty could be presumed to continue such a length of time. It is true, the failure to hold an election may not of itself be a forfeiture; but it may be a cause of forfeiture,—the law making a distinction between that which is of itself a forfeiture, and that which may be alleged as a cause of forfeiture.

The demurrer therefore to this replication should have been overruled.

Judgment reversed, and demurrers to second and eighth replications overruled, leave to rejoin by defendant, and cause remanded.