THE PEOPLE EX REL. ADAM SCRAFFORD, SUPERVISOR OF THE TOWNSHIP OF GROUT v. THE BOARD OF SUPERVISORS OF GLADWIN COUNTY.

*Certiorari to review township organization.*

Whether an application for the subdivision of a single township must be signed by twelve freeholders in each portion of the original township—*Q.*

It is not enough that notice of an application for the subdivision of a township be merely published for four successive weeks before the application is made, unless it is for four weeks immediately previous to that in which it is made.

On certiorari to review the action of the board of supervisors it is only necessary to determine their jurisdiction and the legality of their action.

A board of supervisors cannot divide a township except on a lawful application of which due notice must be given; and when the application is to be made at a special meeting of the board the notice should show when and where the meeting will take place.

An information in the nature of *quo warranto* will not lie against an alleged township whose organization is invalid on the face of the record; it will lie, however, against the several town officers for usurping franchises, but would not lead to any judgment reaching the whole controversy in one record.

A township wholly within the limits of another, and illegally organized by the board of supervisors, can hardly be even a corporation *de facto*, since two corporations *de facto* cannot occupy the same ground at the same time, and all the authorities within the county have notice of the public acts of the board of supervisors.

The existence of counties not acquiesced in by the public can be inquired into by *quo warranto* against officers, or on the trial of indictments, and even in civil controversies where necessary to justice.

*Quo warranto* against a single officer of a municipality does not make the corporation a party any more than it would be in a private suit.

When a corporate existence, irregular in its origin, becomes regular by lapse of time and public acquiescence, it cannot be disputed.

Certiorari lies on the relation of a supervisor whose official rights are involved, to inquire into the existence of a township, where the action of the board of supervisors in organizing it is subject to review.

Certiorari to the board of supervisors. Submitted October 10. Decided October 14.

*Wheeler & McKnight* for relator.

*James Van Kleeck* and *T. E. Tarsney* for respondents. Certiorari does not lie to inquire into the incorporation of a township organized before the writ was taken out, *State v. Brown*, 31 N. J. Law, 355; *State v. Donahay*, 30 N. J. Law, 404; *State v. Van Winkle*, 1 Dutch., 73; *State v. Browning*, 3 Dutch., 527; *quo warranto* is the only remedy, *People v. Carpenter*, 24 N. Y., 86; *State v. Ind. Sch. Dist.*, 29 Ia., 264; *Detroit v. Board of Public Works,* 23 Mich., 546.

CAMPBELL, C. J. This is a proceeding by certiorari to review the action of the board of supervisors of Gladwin county in dividing the township of Grout and setting off a part of it into a new township called Buckeye.

The action complained of was had on the 23d day of April, 1879, and the first election directed to be had on the 7th day of May. Such an election seems to have been had, and town officers chosen. Relator applied for the certiorari on the 30th of May, 1879, and it was issued on June 3d.

The return shows that an application was made on the 2d day of April, 1879, for the division of the township, signed by thirteen persons who called themselves freeholders of the township of Grout and of the territory thereto attached, and three of whom it is shown by the return are not freeholders. The application does not show in what part of the township any of the applicants are freeholders. The law requires the application to be signed by "at least twelve freeholders of each of the townships to be affected by the division." As there were less than twelve freeholders at all who applied, and as there are other defects in the proceedings, we are not required to construe this somewhat obscure provision, or to determine whether it requires freeholders from each separate portion of the original township as divided, when the new township includes no territory that was before within more than one existing town. Comp. L., § 480, et seq.

Before such an application can be made, the statute requires notice in writing of such intended application, subscribed by not less than twelve freeholders of the township or townships to be affected, to be posted in five of the most public places in each of the townships to be affected thereby, four weeks next previous to such application, and a copy of such notice to be published in some newspaper (if there be one) published in the county once in each week four successive weeks imme-

diately preceding the meeting of the board at which the application is to be made. § 481.

The supervisors if they grant the application are to designate the name of the new township, the time and place of holding the first annual township meeting thereof, and three electors to hold the election and perform the duties of inspectors. Notice of this time and place is to be given signed by the chairman and clerk of the board of supervisors, by posting in four of the most public places in each of the townships whose boundaries have been altered, "at least fourteen days before holding the same." The board is also required to fix the place for holding the first township meeting "in the town or towns from which such new township shall be taken."

As this is a certiorari to review the action of the board of supervisors, we are only required to look at their proceedings and determine their jurisdiction and the legality of their action.

A notice was signed by a considerable number of persons describing themselves as freeholders of the township of Grout, dated February 11, 1879, and declaring that the signers would petition the board to organize a new township of territory named "at their next session." The notice does not point out the time or place of the session at which the application was to be made, and it does not appear whether or not a special session had then been appointed. No regular session was provided for by law until the ensuing October. A special session was held March 19, 1879, and adjourned without day. Another special session was held April 7th, which also adjourned without day. A third special session began April 22d and adjourned finally on the 23d.

On the 2d of April, 1879, affidavits were filed of publication and posting. The publication was sworn to have been for four weeks, the first insertion being on February 12th and the last March 12th. This publication could not have authorized an application to be

made after March 19th. Affidavits of posting of two notices were made April 2, swearing to such posting "four weeks previous to the meeting of said board as required by law." Affidavit of posting the other three notices was made in the same language on March 31. None of these showed when or where the posting took place or what meeting is referred to.

The application was not filed or acted on until April 2. A resolution was then introduced for organizing the new town, and fixing April 7 as the time for holding the "*first special election.*" This resolution was laid on the table.

On April 23d the resolutions were taken from the table and amended by inserting May 7 instead of April 7.

A resolution was then offered and adopted "that the resolution offered by J. G. Dow on the 19th day of March, 1879, relating to the organization of the township of Buckeye, as amended by previous motion of John McGregor, be and the same is hereby adopted."

As the power of the supervisors to divide the township depends on the performance of the statutory conditions without which they had no jurisdiction, their action was void for several reasons. They had no lawful application before them. Notice was not published four weeks immediately preceding either the 2d or 23d day of April. No notice was given at all of the time and place of the meeting referred to, and special board meetings are not publicly known, because the time of holding them is not fixed by law or public announcement. There was no definite notice of posting at any time or place. And the resolution as finally adopted was not identified, as no resolution had been introduced on the 19th of March.

It would be difficult to find a case in which proceedings are so completely unlawful. They are invalid on their face throughout. This is substantially admitted. But it is claimed the remedy is not correctly chosen,

and that proceedings should have been taken by *quo warranto*.

There could be no such proceeding against the new township, because that would admit it to be a corporation. Inasmuch as its existence depends on the action of the supervisors which is of record, and which is void on its face, there are none of the difficulties found in determining this fact which sometimes occur where depending on matters outside of the record, and which require proof. No doubt informations would lie against the several town officers for usurping franchises, but these would not lead to any judgment directly reaching the whole controversy in one record, and would lead in such a case as the present to such delays as would aggravate the mischief.

It is very doubtful whether such an organization is even a corporation *de facto* for any purpose. It is not detached from all other jurisdictions, but it is entirely within another single township whose officers claim, and claim rightfully, legal authority over its territory. There cannot very well be two corporations *de facto* covering the same ground, and as all the authorities within the county have notice of the public acts of the board of supervisors, all the people of the township of Grout know beyond controversy that there is no such township as Buckeye. Every one, therefore, who knows of the claim knows at the same time that it is a void claim.

It has never been decided by this court either that the existence of public governmental subdivisions for ordinary civil government can in no case be inquired into collaterally; or that it cannot be inquired into directly by certiorari, where the action of public bodies is subject to review. The existence of new counties has not only been inquired into by *quo warranto* against officers, as in *People v. Maynard*, 15 Mich., 463, but on the trial of indictments, as in *People v. Burns*, 5 Mich., 114, and in civil controversies where necessary to justice, as in *Craig v. Grant*, 6 Mich., 447, and *Rice v. Ruddiman*,

10 Mich., 125.   It is undoubtedly true that courts do not favor any needless stirring up of such questions, and will not open them in favor of interloping litigants, nor overlook the force of such public acquiescence as cures original irregularities. *People v. Maynard,* supra; *Frac. Sch. D. No. 1 of Owosso v. School Inspectors,* 27 Mich., 3; *Clement v. Everest,* 29 Mich., 19; *Stuart v. School Dist. No. 1 of Kalamazoo,* 30 Mich., 69; *Bird v. Perkins,* 33 Mich., 28.

It must be remembered that where *quo warranto* is brought against single officers the corporation, if there be one, is no more a party than in private suits.    Every case must depend chiefly on whether the persons litigant have distinct rights involved in the existence or non-existence of the corporation.   If they have, no court can refuse to consider them.    But corporate existence which was irregular in its origin may often become regular by lapse of time and public acquiescence, and then it can no longer be disputed by any one.

Inasmuch as the writ of *certiorari* is to a certain extent discretionary, we have generally objected to discussing the regularity of proceedings to organize the smaller municipal bodies, unless the controversy was such that serious mischief would result from the refusal. But in cases where it can be properly done at all, it is quite manifest that less mischief will follow from direct proceedings on complaint of public representatives than from indirect action which, although announcing rules, does not of itself undo the evil complained of.

In the present case there was no public acquiescence and no sensible delay.   The relator has duties to perform within the whole township of Grout, and is officially interested in knowing its boundaries.   One assessment or the other is void within the disputed territory.   No case could call on us more strongly for action in the interests of the whole community, and all delays are dangerous.   Our action in the matter will legally end the controversy.

We therefore deem it our duty to retain jurisdiction and to quash the proceedings.

The other Justices concurred.