THE PEOPLE *ex rel.* John Weber *et al.*

*v.*

THE CITY OF SPRING VALLEY *et al.*

*Filed at Ottawa June 15, 1889.*

| 129 | 169 |
| 132 | 166 |
| 129 | 169 |
| 49a | 633 |
| 50a | 166 |
| 50a | 588 |
| 129 | 169 |
| 156 | 481 |
| 129 | 169 |
| 55a | 510 |
| 129 | 169 |
| 166 | 523 |
| 129 | 169 |
| 168 | 486 |
| 129 | 169 |
| 173 | 104 |
| 129 | 169 |
| 75a | 541 |
| 129 | 169 |
| f192 | [4]312 |
| 192 | [2]379 |
| 129 | 169 |
| 194 | [6]547 |
| 196 | 267 |
| 129 | 169 |
| 102a | [7]423 |

1. QUO WARRANTO—*parties—in proceeding against a corporation as such—or against persons who unlawfully assume to be a corporation.* Where an existing corporation abuses any of its franchises, or usurps franchises which do not belong to it, the information should be against the corporation as such. But when a body of men or a number of individuals unlawfully assume to be a corporation, the information should be against them as individuals, and not by their assumed corporate name. This rule applies to municipal as well as private corporations.

2. If the information charges a city with exercising a franchise not authorized by its charter, it is proper to make the city a party defendant by its corporate name; but if it calls in question the corporate existence of the city or the legality of its organization, the information must be brought against the officials or individuals assuming to exercise the corporate powers.

3. SAME—*proceeding against a corporation by name admits its corporate existence.* The effect of filing an information against a corporation by its corporate name, to procure a forfeiture of its charter or to compel it to disclose by what authority it exercises its corporate franchise, is to admit the existence of the corporation. When, therefore, the information is filed against the respondent in its corporate name, and process is issued and served accordingly, and the respondent appears and pleads in the same corporate character, its corporate existence can not afterward be controverted.

4. SAME—*replication inconsistent with the information is a departure.* Where an information is filed against a city by its corporate name, replications to pleas, denying the fact of incorporation or setting up facts impeaching the validity of its organization, are obnoxious to demurrer, as being inconsistent with the information, and as a departure therefrom.

5. SAME—*amendment of information—as making it inconsistent with itself.* On an information in the nature of a *quo warranto*, against a city, by its corporate name, for the purpose of calling in question the legality of its incorporation, the relators asked leave to amend the information by inserting after the name of the city the words, "never having been lawfully and legally incorporated under the laws of the State," which the court refused to allow: *Held,* no error, as the pro-

posed amendment would have rendered the information inconsistent with itself, in admitting the corporate existence of the city and at the same time denying such existence.

6. PLEADING—*carrying demurrer back—to what pleading.* The general rule is, that a court will not, in carrying a demurrer back, sustain it to a pleading of the adverse party, to which a demurrer has already been overruled.

7. SAME—*declaration not supporting judgment.* But if the declaration is so defective as not to support the judgment, that may be availed of on error, or, in the case of an information in the nature of a *quo warranto*, the trial court may dismiss the information, even after a demurrer thereto has been overruled and the defendant has pleaded over.

8. APPEALS—*whether a franchise is involved—former decisions.* Where the right to hold a municipal office depends upon the legality of the incorporation of the municipality, under an act of the legislature, a franchise is involved in a *quo warranto* proceeding to test such right. The cases of *People* v. *Holtz,* 92 Ill. 426, and *Graham* v. *People,* 104 id. 321, in so far as they hold a contrary view, are overruled.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. BREWER & STRAWN, and Messrs. ECKELS & KYLE, for the plaintiffs in error:

A demurrer can not be carried back and sustained to a pleading to which a demurrer has been overruled. *Stearns* v. *Cope,* 109 Ill. 340; *Culver* v. *Bank,* 64 id. 528; *Walker* v. *Welch,* 14 id. 277; *Express Co.* v. *Pinckney,* 29 id. 392.

Again, we insist the information was good and sufficient. The practice, in *quo warranto* proceedings, does not require the People to show anything by the information, or to present the facts upon which the relators rely. The information calls upon the defendants to show by what warrant they exercise their franchises, and they must exhibit good authority for so doing, or the People will be entitled to judgment. The object of the information is to call into question defendants' title to the franchises claimed, and then the entire *onus* is on the defendants, and they must show, by their pleas, that they have

a valid title to the franchises.    *Clark* v. *People ex rel.* 15 Ill.
213; *People ex rel.* v. *Ridgely*, 21 id. 65.

We think the court below erred in sustaining the demurrer
to the replications.    The proper practice seems to be to charge
usurpation, generally, in the information, and upon the defend-
ants setting forth the acts of incorporation, and justifying
under them, to reply, setting forth the causes of forfeiture,
facts which avoid the plea, or traverse its allegations. *People
ex rel.* v. *Improvement Co.* 103 Ill. 491; *People ex rel.* v. *Bank
of Niagara*, 6 Cow. 196; *People* v. *Railroad Co.* 12 Mich. 389;
*People* v. *Richardson*, 4 Cow. 97, note; *Commonwealth* v. *Bank*,
28 Pa. St. 383; Angell & Ames on Corp. secs. 734, 756, 760.

*Quo warranto* is the proper remedy where it is sought to
exercise the privileges and powers of any municipal corpora-
tion without authority of law.    High on Ex. Legal Rem. 500,
sec. 684; *State* v. *Bradford*, 32 Vt. 50.

A bad reply is good enough to a bad plea, and will be held
good on demurrer.    *Ashley* v. *Foreman*, 85 Ind. 55; *Frost* v.
*Hammett*, 11 Pick. 70.

Even if the replications were all bad, but the plea to which
they were filed was substantially faulty also, the court should
have carried the demurrer back and sustained it to the plea.
*Insurance Co.* v. *Stanton*, 57 Ill. 354; *Tipton* v. *Carrigan*, 10
Bradw. 318; *Townsend* v. *Jemison*, 7 How. 706; 2 Wils. 150.

Mr. G. S. ELDREDGE, for the defendants in error:

The city, if it had a legal existence, had the right to exer-
cise municipal control over the territory in its limits, and the
trial court is bound to take judicial notice of the existence
and boundaries of cities.    Rev. Stat. chap. 27, sec. 6; *Brush*
v. *Lemma*, 77 Ill. 497; *Potwin* v. *Johnson*, 108 id. 70; *Chi-
cago* v. *People*, 80 id. 496.

The information, being against the city, admitted its cor-
porate existence, and the replications seeking to assail such
existence are inconsistent with the information, and are a de-

parture.  *Chesshire* v. *People,* 116 Ill. 492; *People* v. *Draper,* 15 N. Y. 532; *People* v. *Carpenter,* 24 id. 36; *People* v. *Board of Education,* 101 id. 308; *Graham* v. *People,* 104 id. 322.

Where the information charges that there never was a corporate existence, the proceedings must be against the persons assuming to act as a corporation.  *Chicago* v. *People,* 80 Ill. 496; *People* v. *Railroad Co.* 15 Wend. 113; *People* v. *Supervisors,* 41 Mich. 652; *State* v. *Gas Co.* 18 Ohio St. 262; *Granville* v. *Alexandrian Society,* 11 id. 8.

We are aware of no case in this country in which a body, such as a corporation, has been ousted of the franchise to be a corporation, on the ground that it never had a corporate existence.  *State* v. *Gas Co.* 18 Ohio St. 262; *People* v. *Bartlett,* 6 Wend. 424; *State* v. *Coffee,* 59 Mo. 59; *Stultz* v. *State,* 65 Ind. 403; 48 Vt. 266.

So, then, it must be certainly regarded as conclusively settled, upon principle and authority, that an information filed against a corporation admits, necessarily, the existence of the corporation.

Mr. Justice Magruder delivered the opinion of the Court:

This was an information in the nature of a *quo warranto,* filed, by leave, in the Circuit Court of Bureau County, on April 23, 1886, against the City of Spring Valley, and Charles J. Devlin as Mayor of said city.  The information charged, that the city of Spring Valley was then using, and for three months past, had used, without any warrant, charter or grant, the following liberties, privileges and franchises, to-wit: that of exercising the municipal powers of every kind and nature conferred by "An act to provide for the incorporation of cities and villages," over certain specified territory in the township of Hall in Bureau County, and over all persons found or residing within the limits of said territory; and that Devlin then was, and, during the same time, had been exercising the powers,

rights, franchises and duties conferred by said act upon mayors of cities, claiming to be, without any warrant or authority of law, Mayor of said city of Spring Valley; all which privileges, franchises and duties said city and said Devlin had usurped and still usurped to the damage and prejudice of the People and against the peace and dignity of the same. The information contains a prayer that the defendants answer by what warrant they respectively claim to have, use and enjoy and exercise the said privileges, liberties, franchises and duties.

The defendants demurred to the information. Their demurrers were overruled, and they failed to stand by them, but filed pleas to the information. In their pleas, they attempted to set up the various steps taken for the organization of the city, as required by section 5 of said act, beginning with the filing of the petition with the clerk of the county court on January 8, 1886, and ending with the calling of an election to vote upon the question of incorporation, the canvassing of the vote, the declaration of the result showing a majority in favor of organization, the certificate thereof of the county judge, and the recording of the result upon the records of the county court, etc. The pleas also set up the proceedings for the election of city officers, showing the election of Devlin as mayor on February 23, 1886, and that he was duly qualified, etc.

The People filed seven replications to the pleas, the first denying the incorporation, the second, third and fourth, denying that the petition was subscribed by 50 legal voters, that there was a resident population of 1000 inhabitants, and that the territory described was contiguous territory. The fifth, sixth and seventh replications charge, that the organization of the city of Spring Valley was fraudulent; that Devlin controlled the Spring Valley Coal Company; that the miners, who were employed by the company, constituted nearly all the population of the territory and were under the control of Devlin; that he fraudulently procured the petition to be signed and the organization to be voted for by his mining employees; that he

was owner of most of the ground platted into lots, blocks, streets and alleys; that the territory described in the information comprises all the territory in the limits of said pretended city; that before January 22, 1886, there was no organized city in said territory and no such municipality as the city of Spring Valley; that underlying said lands were strata of coal; that the company had sunk shafts upon some of said lands and erected buildings and other improvements; that Devlin fraudulently omitted these portions of his lands from said petition, so that it might escape taxation for city purposes; that such lands were suited for municipal purposes; that, without the knowledge of relators or notice to them, he included their lands in said petition, so as to make them bear the burdens of the municipal taxes, and thereby improve his own property; that the lands of relators were only adapted for agricultural purposes, and were farming lands, and pasturage and wooded lands; that the same were fraudulently inserted in said petition; that the remainder of said territory, except that occupied by the employees of said coal company was sparsely settled, there being only about one family to each 150 acres; that said company and Devlin, its general manager, put into execution a fraudulent scheme to defraud the owners of lands adjoining those of the company by compelling such owners to contribute by taxation to the improvement of the company's lands that were platted, and by relieving those not platted from taxation, and, for that purpose, fraudulently caused the petition to be presented to the county court, and falsely and fraudulently represented that it was signed by 50 legal voters, and that said territory was occupied by 1000 inhabitants, and that the same was contiguous, etc.

The defendants demurred to these replications. The Court sustained the demurrers. On August 22, 1887, the defendants moved for judgment on the demurrers to the replications. September 14, 1888, the Court sustained the motion, and dismissed the information.

The demurrers to the replications were properly sustained. The first replication was a general denial of the legal incorporation of the city. The second, third and fourth were specific denials of particular facts necessary to constitute such legal incorporation. The fifth, sixth and seventh charged, that the incorporation was illegal and void by reason of the fraudulent means put forth to secure it. In substance, therefore, all the replications attacked the existence of the city of Spring Valley as a corporation. But this was a departure from the information, or, if not a technical departure in pleading, it amounted to a contradiction of the information by the replications, because the information, by making the City of Spring Valley a party defendant, thereby admitted its existence as a corporation.

When an existing corporation abuses any of its franchises, or usurps franchises which do not belong to it, the information should be against the corporation as such. But when a body of men, or a number of individuals, unlawfully assume to be a corporation, the information should be against them as individuals, and not by their corporate name. Dillon in his work on Municipal Corporations (vol. 2, 3d ed., sec. 895) says: "It is held, in England, that if the information be for usurping a franchise by a corporation, it should be *against the corporation;* but, if for usurping the franchise to be a corporation, it should be *against the particular persons* guilty of the usurpation." (*People* v. *Richardson*, 4 Cowen, 97; *People* v. *R. and S. R. R. Co.* 15 Wend. 113; *People* v. *Supervisors*, 41 Mich. 647; *State, etc.* v. *Cin. Gas Light and Coke Co.* 18 Ohio St. 262).

The weight of authority in this country "may now be regarded as sustaining the proposition, that the effect of filing an information against a corporation by its corporate name to procure a forfeiture of its charter, or to compel it to disclose by what authority it exercises its corporate franchise, is to admit the existence of the corporation. When, therefore, the information is filed against the respondent in its corporate

name, and process is issued and served accordingly, and the respondent appears and pleads in the same corporate character, its corporate existence cannot afterwards be controverted." (High on Ex. Leg. Rem. 2d ed. sec. 661; *State* v. *Commercial Bank of Manchester*, 33 Miss. 474; *People* v. *R. & S. R. R. Co. supra; State* v. *Cin. Gas L. & C. Co. supra*).

If, in the present case, the information had charged the city of Spring Valley with exercising a franchise not authorized by its charter, it would have been proper to make the city a party defendant by its corporate name. But as the information calls in question the corporate existence of the city, it should have been brought against the officials or individuals assuming to exercise the corporate powers.

Some of the authorities seem to draw a distinction between private corporations and municipal corporations, and to hold that an information may be brought against a municipal corporation by its corporate name, even where its corporate existence is challenged, the proceeding in such case being against the city as a corporation *de facto,* and not as a corporation *de jure.* (*State* v. *Bradford,* 32 Vt. 50 ; *People* v. *City of Riverside,* 66 Cal. 288). We do not think, however, that an exception to the general rule can be held to exist in this state in the case of municipal corporations.

In the *City of Chicago* v. *The People,* 80 Ill. 496, the proceeding was an information in the nature of *quo warranto* against the city of Chicago, requiring it to show by what authority it exercised the franchises conferred by the city incorporation act of 1872, the charges being that the question of minority representation was not submitted at the election to determine the question of incorporation, and that such election was invalid for fraud and other irregularities. The right to bring the information against the city of Chicago *eo nomine* was not discussed. On the contrary it is there said : "It has not been necessary to consider whether this proceeding will lie against a municipal corporation as a body." It must be re-

membered also, that, in that case, the question was, whether
the city of Chicago had organized under the incorporation Act
of 1872 by legally adopting that act as its charter. The City
of Chicago existed under another charter prior to the election
upon the question of becoming incorporated under the act of
1872. If that election had been against incorporation, the
city still existed under its old charter. Therefore, the party
defendant to the *quo warranto* proceeding was a city already
existing, and not one deriving its sole existence from the elec-
tion under discussion in that case. Here, however, the City
of Spring Valley had no corporate being prior to its incorpo-
ration, or attempted incorporation, under the act of 1872.
When it was made defendant to the information, its existence
as a corporation under that act was admitted.

In *Chesshire* v. *The People*, 116 Ill. 493, the information
was against certain persons assuming to act as directors of a
school district. The defendants demurred to the information,
and, upon the demurrer being overruled, they elected to stand
by the demurrer. One of the objections to the information
was that the school district was not made a party. It was
there held that, as the information proceeded upon the hy-
pothesis, that there was no corporation in law, by the name
of "school district No. 9," it would have been impossible to
make the corporation a party, and that the persons assuming
to act as directors of the district were "the only parties that
need be before the court to test the validity of the organization
of the district."

Moreover, the statute of this State in relation to *quo war-
ranto*, (Starr & Cur. Stat. chap. 112, page 1871), provides that
the information may be filed where "any association or number
of persons shall act within this State as a corporation without
being legally incorporated." This language implies, that, where
the legal existence of the corporation itself is questioned, the
proper defendants to the information are the *persons* who as-
sume to act as a corporation. The subsequent clauses indi-

12—129 ILL.

cate, that the corporation itself is a proper defendant, when it "does or omits any act, which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises powers not conferred by law."

It is claimed, however, that, by dismissing the information, the trial court carried the demurrers to the replications back to the information, and that this was erroneous because the defendants had demurred to the information, and their demurrers had been overruled. Unquestionably the general rule is, that the court will not, in carrying the demurrer back, sustain it to a pleading of the adverse party to which a demurrer thereto has already been overruled. (*Culver* v. *Third National Bank of Chicago*, 64 Ill. 528). But if the declaration is so defective as not to support the judgment, that may be availed of on error, even after a demurrer thereto has been overruled, and the defendant has pleaded over. (*Kipp* v. *Lichtenstein*, 79 Ill. 358; *Smalley* v. *Edey*, 19 id. 207.)

In the present case the declaration is so defective, that it could not support the judgment. The judgment would be one of *ouster* against the corporation for not having been legally organized. But the declaration admits that it was legally organized. The judgment would be inconsistent with and contradictory of the declaration. It would be based upon the non-existence of a corporation, whose existence the declaration admits.

In *The State* v. *The Cin. Gas L. & C. Co. supra*, the pleadings were substantially the same as in the present case; the information was against the Gas Company as a corporation; a replication of the State to one of the pleas of the company, in substance, denied the existence of the corporation; the company demurred to the replication and the demurrer was sustained. In that case, the court say: "It is claimed by counsel for defendant that this replication is a departure in pleading; that the information having been filed, and process issued against the defendant by its corporate name, and not

against individuals as usurpers of the franchise to be a corporation, the fact that the defendant has or once had a legal existence as a corporation is admitted, and cannot, therefore, be drawn in question by the state, in its subsequent pleadings in the case.  *  *  *  In this country, we think, the great weight of authority favors the ground taken by counsel for defendant.  *  *  *  We are aware of no case in this country, in which a body, sued as a corporation, has been ousted of the franchise to be a corporation, on the ground that it never had a legal corporate existence."

Inasmuch, therefore, as any judgment, which may have been entered in favor of the People under the pleadings in this record, could have been reversed on error, the court below committed no error in dismissing the information. The latter would not support the judgment, even if the pleas are defective for the reasons urged by counsel for the People. If the demurrers to the replications had been carried back to the pleas, and judgment had then been rendered against the defendants upon the information, the judgment would have been subject to reversal on error in this court.

After the demurrers to the replications had been sustained, and defendants had moved for judgment on those demurrers, the People moved to amend the information by inserting after the words, "the city of Spring Valley," the words, "never having been lawfully and legally incorporated under the laws of the State of Illinois." The trial Court overruled the motion to amend, and its action in this regard is complained of as error. The City of Spring Valley, as a corporation, would still have been a party defendant, notwithstanding the allegation that it was not legally incorporated. The information would have been inconsistent with itself in admitting the existence of the city, and at the same time denying such existence. Hence, the People suffered no injury from the refusal of leave to amend in the respect indicated.

Defendants in error have made a motion to dismiss the writ of error for want of jurisdiction in this Court. The motion was reserved when the cause was taken. The right to exercise the municipal powers and privileges, conferred by the legislature upon cities under the act for the incorporation of cities and villages, is a franchise of the highest character. Such right is directly involved in the issues made by the pleadings in this case. Therefore the writ of error has been properly sued out from this Court directly to the Circuit Court. The motion to dismiss is accordingly denied.

Upon more mature reflection, we are satisfied, that where the right to hold a municipal office depends upon the legality of the incorporation of the municipality under an act of the Legislature, a franchise is involved in a *quo warranto* proceeding to test such right. In so far as the cases of *The People* v. *Holtz*, 92 Ill. 426, and *Graham* v. *The People*, 104 id. 321, hold a contrary view, they are overruled.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*