STATE ex rel. E. T. YOUNG v. VILLAGE OF HARRIS and Others.[1]

November 15, 1907.

Nos. 15,345—(15).

**Village de Facto—Quo Warranto.**

Sound principles of public policy require that the state should be precluded from attacking the franchise of a village which had been permitted to exercise the functions of a village de facto for the period of twenty years and had been recognized as an existing village by legislative enactment.

Upon information of the attorney general the supreme court issued its writ of quo warranto directed to the Village of Harris and the officers of said village. To their answer the state demurred. Writ discharged.

*E. T. Young*, Attorney General, and *Alfred P. Stolberg*, for relator.
*S. G. L. Roberts*, for respondents.

1 Reported in 113 N. W. 887.

LEWIS, J.

Quo warranto, upon the relation of the attorney general, to determine the validity of the proceedings to incorporate the village of Harris, in Chisago county. The admitted facts are that the village was incorporated in 1887 under chapter 145, p. 148, Laws 1885, and included territory six miles in length and from three to four miles in width, containing altogether twenty six sections. About eighty acres of this tract was platted, and the only nucleus or collection of houses within the entire territory was upon the platted portion, which at that time contained a population of about one hundred twenty five people; that the entire population within the limits of the village was three hundred sixty persons, and all the territory outside the platted portion consisted of farm land largely uncultivated. It is also admitted that ever since its alleged incorporation in 1887 it has continued to exercise the powers and to perform the duties conferred upon it by law; that it has enacted and enforced ordinances, expended large sums of money in constructing streets and lighting the same, and building bridges over streams, etc.; that it has purchased and holds real estate and personal property of considerable value for the use of the village.

Respondents concede that the corporation might have been declared illegal, had proceedings for that purpose been begun within a reasonable time; the defect being that a large amount of territory was included which was not suburban, or adjacent to the platted portion, or to the nucleus of population. State v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25 L. R. A. 755; State v. Village of Fridley Park, 61 Minn. 146, 63 N. W. 613; State v. Village of Holloway, 90 Minn. 271, 96 N. W. 40. But respondents urge that no such proceedings have ever been undertaken, that the village has existed as a corporation de facto for the period of twenty years, and that the public has transacted business with it in good faith upon the supposition that it was a legal corporation; further, that the state itself specifically recognized the existence of the village by the enactment of chapter 101, p. 170, Laws 1891, which act created it a separate election and assessment district; that, the corporation having taken the benefit of that act and conducted itself accordingly for the period of sixteen years, the state should be held to have waived the right to deny its existence as a valid corporation. Respondents also urge that the village has

accumulated property in good faith which cannot equitably be restored to those who have been assessed for the payment thereof. In answer to these suggestions, relator insists that, notwithstanding the fact that the village has been permitted to exist for twenty years and to exercise the functions·of a corporation, yet the principle of estoppel has no application to such a case, and relies upon the maxim, "Nullum tempus occurrit regi."

In State v. School District, 85 Minn. 230, 88 N. W. 751, it was held that the state was precluded from attacking the validity of the corporation by the fact that the state recognized the. corporation's existence by purchasing its bonds. This principle has sometimes been called estoppel in pais, waiver, acquiescence, or laches. In State v. Leatherman, 38 Ark. 81, it was held that the state, by long acquiescence and continued recognition of a municipal corporation, was precluded from depriving it of the franchise long exercised in accordance with the general law. In the case of Jameson v. People, 16 Ill. 257, 63 Am. Dec. 304, in speaking of the subject from the standpoint of public policy, the court say: "If there is no such corporation, all acts done under the supposed corporate powers are mere nullities, and no liabilities can exist by reason of contracts made in the corporate name, except, perhaps, against individuals who never contemplated themselves incurring personal liabilities by acts performed in an official capacity. Were we to hold, after this acquiescence of the public and these recognitions of the legislature, that the town remains unincorporated on account of some defect in its original organization as a corporation, what confidence could individuals have in the validity of securities emanating from these local authorities?" The case of People v. Pullman, 175 Ill. 125, 51 N. E. 664, 64 L. R. A. 366, referred to by relator, was an action brought in the nature of quo warranto to annul the company's charter upon the ground that it was usurping powers not granted by its charter. The court recognized the general rule that laches, acquiescence, or unreasonable delay in the performance of duty on the part of officers of the state is not imputable to the state when acting in its character as a sovereign, and the further principle that the sovereign shall not be allowed to deny that a de facto corporation is a corporation de jure, if the sovereign omits for an unreasonable time to enforce the forfeiture; but it was held that the facts

in that case did not call for an application of the rule, because the corporation was attempting to exercise corporate powers which it had no power to exercise under its charter. In State v. Town of Westport, 116 Mo. 582, 22 S. W. 888, it was held that quo warranto proceedings will not lie on the part of the state to deprive a city and its officers of their franchise because of irregularities in its organization after the lapse of twelve years, and after repeated recognition of its corporate existence by the courts and legislatures during that time.

While the facts upon which some of these decisions rest are stronger, in that the acts of recognition were more extensive, yet the principle is the same, and in no case was the time of acquiescence equal to the period in this case. The question involved is not whether the corporation was void from the beginning by reason of a defective petition, or arose from a defect in some subsequent step of the proceedings. We perceive no difference between the case now under consideration and others cited by the relator, where the defect grew out of some intermediate step in the process of incorporating. Although under the decisions of this court the village of Harris was not legally incorporated, for the reason that it attached territory not authorized under the act of 1885, yet the legislature might have authorized villages to be incorporated with such territory, and whatever the legislature originally had the power to do, it also, by its subsequent conduct, had power to ratify. We conclude that, under the circumstances, the state should not be heard to question the existence of the village.

Our decision is based upon sound principles of public policy. No public interest would be subserved in permitting the state, after a period of twenty years, to have the village franchise annulled. Although good reasons may exist why the village should not continue indefinitely, on account of the friction that is liable to arise between conflicting interests, the difficulty should be solved by the legislature, if a legal remedy does not already exist.

Writ discharged.