[Civ. No. 3954.   Second Appellate District, Division One.—June 16, 1922.]

## J. H. VAN WAGENER, Appellant, v. J. B. MacFARLAND et al., Respondents.

[1] SCHOOL LAW — INCORPORATION OF DISTRICTS — CURATIVE LEGISLATION—RETROSPECTIVE EFFECT.—The act of the legislature passed in the year 1905 (Stats. 1905, p. 243), which provides that school districts acting as such for a period of five years under the laws of the state are "declared" to be duly incorporated, was retrospective only in its effect.

[2] STATUTORY CONSTRUCTION — CURATIVE ACTS. — Curative acts are remedial in their nature and they will not be construed within the narrow limits of the letter of the law, but rather be given liberal effect to promote the general object sought to be accomplished.

[3] SCHOOL LAW—INCORPORATION OF PORTION OF SCHOOL DISTRICT—MAINTENANCE OF ORIGINAL DISTRICT — DE FACTO EXISTENCE. — Where an unincorporated town embraced within a school district incorporates as a city of the sixth class, but no separate school district is attempted to be maintained, the school district retains its original name, the school trustees for the district are thereafter elected jointly by the inhabitants of said city and those resident in the remaining portion of the school district, and the schools are continued to be maintained as before the incorporation proceedings were had, full acquiescence being made by all the inhabitants, the district has a *de facto* existence.

[4] MUNICIPAL CORPORATIONS—REGULARITY OF ORGANIZATION—ATTACK BY CITIZEN.—The regularity of the proceedings by which a public corporation of a municipal character has been called into existence cannot be questioned at the suit of an individual citizen or taxpayer.

[5] ID. — USURPATION OF FRANCHISE RIGHTS — ATTACK BY STATE. — Public corporations of any character whatsoever, exercising governmental functions, do so by reason of a delegation to them of a part of the sovereign power of the state; and where they are claiming to act and are actually functioning without having complied with the necessary prerequisites, they are usurping franchise rights as against paramount authority, to complain of which it lies only with the right of the state itself, and an attack by an individual is unauthorized, whether it is made in defense of a tax levied to pay existing bonded indebtedness, or whether it be by injunction to prevent the issuance of bonds after an election has been held within the territory affected, authorizing such securities to be issued.

[6] SCHOOL LAW — VOTING OF BONDS BY DE FACTO DISTRICT — VALIDITY.—Where a school district having a *de facto* existence by regular proceedings has authorized the issuance of bonds, such bonds may be legally issued, and when sold they will represent binding obligations against all the property of such *de facto* district.

APPEAL from a judgment of the Superior Court of Kern County. H. A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sherwood Green for Appellant.

J. R. Dorsey, R. B. Lambert and M. G. Gallaher for Respondents.

JAMES, J.—Plaintiff brought this action to secure an injunction restraining the defendants from issuing and causing to be sold bonds in the amount of three hundred and sixty thousand dollars of the Conley School District, county of Kern. The relief prayed for was denied. Plaintiff has appealed. The questions involved arise upon the judgment-roll.

The regularity and manner in which the bond election was conducted are not claimed to have been invalid. The whole contention advanced by appellant concerns the matter of the organization of the Conley School District, par-

ticularly as to portions which it is insisted were not regularly annexed thereto. Prior to November, 1910, Conley School District was composed in part of an unincorporated town called "Moron." The latter, in the month mentioned, after proceedings regularly had, was incorporated as a city of the sixth class under the name of "Taft." In February, 1920, the board of supervisors of Kern County passed a resolution purporting to annex to Conley School District the territory within a district called "Signa," which latter had been duly formed in November, 1919, but had conducted no schools up to the time of the annexation resolution. From the date of the incorporation of the city of Taft until the commencement of this action no separate school organization was caused to be made within the municipality, but the inhabitants of that territory continued to regard themselves as still being within Conley School District. Schools were conducted by that district, trustees were elected generally, some from within the city of Taft and some from the outlying territory. The school organization of the Conley District was not disturbed in any manner whatsoever by reason of the incorporation proceedings. (However, the board of supervisors in September, 1911, upon recommendation of the county school superintendent, made a resolution which in terms directed that the territory within the city of Taft be annexed to Conley School District.) In like manner, after the attempted annexation of the Signa School District, the inhabitants of that district acquiesced in the order of annexation, as did the remainder of Conley School District. Plaintiff expressly alleged in his petition: "That since the respective orders of the Board of Supervisors of Kern County in respect to the annexation of the territory in the City of Taft and of the territory in Signa School District to Conley School District, the territory within said City of Taft and within Signa School District, as incorporated as aforesaid, has at all times been regarded and treated by the school board of said Conley School District and by the taxing officers of said Kern County, and by the public generally, as constituting portions of said school district and the children therein have attended the school of said school district."

Appellant questions the validity of the order of annexation of the Signa District for lack of compliance with

statutory formalities. He also claims that the board of supervisors in no event had authority to annex the territory of a municipality to a school district made up of unincorporated territory—this because of the provisions of section 1576 of the Political Code as the same existed at the times material to the controversy, and which provided that "every city or incorporated town, unless subdivided by the legislative authority thereof, shall constitute a separate school district, . . . " Respondents concede that there were irregularities in the attempted annexation of the Signa School District and that the authority of the supervisors to annex territory within the municipality of Taft to the Conley School District may be subject to question. They look largely to certain curative acts of the legislature as validating the attempted annexation proceedings. The case will be considered, therefore, with the question as to the irregularity of the two annexation proceedings as admitted. **[1]** Attention is first called to an act of the legislature passed in the year 1905 (Stats. 1905, p. 243), which provides that school districts, acting as such for a period of five years under the laws of the state, are "declared" to be duly incorporated. An examination of this act leads to the conclusion that it was retrospective only in its effect. It was adopted prior to any of the proceedings referred to in this case; hence affords no aid to respondents. The second act is one of 1915 (Stats. 1915, p. 106), which provides in part as follows: "Where the board of supervisors of any county have purported to establish a school district of any kind or class situated within such county, and such district has acted as a school district for a period of one year previous to the taking effect of this act, all acts and proceedings taken . . . are legalized, validated and declared sufficient." This act was passed before the annexation of the "Signa" territory, but after the incorporation of the city of Taft and the making of the alleged order annexing the municipality to Conley School District. Appellant argues that this act has no reference to annexation proceedings, but relates wholly to the establishment of new districts. **[2]** It has been held that curative acts are remedial in their nature and that they will not be construed within the narrow limits of the letter of the law, but rather be given liberal effect to promote the general

object sought to be accomplished. (*Kramm* v. *Bogue et al.*, 127 Cal. 122 [59 Pac. 394].) The argument to the last point is one which nevertheless suggests room for debate, but in view of what is hereinafter stated it will be unnecessary to announce a definite decision upon that point. There are two further remedial statutes, both passed by the legislature in 1921, one of which expressly validates defective proceedings for the change of boundaries of a school district, the second of which validates proceedings for the establishment of such districts, each containing the proviso that the district affected shall have acted as such for a period of one year previous to the taking effect of the law. These acts became effective on July 29, 1921. They are both found on page 457 of the Statutes of 1921. Another curative act (Stats. 1921, p. 456) was intended to validate bonds of school districts where the proceedings resulting or to result in the issuance of such bonds are faulty in any particular. It is not denied by appellant in his reply that the curative act relating to cases where boundaries of a school district have been changed would have the effect of validating the annexation of the "Signa" territory; hence no further consideration need be given to that question. Appellant insists, however, that as to the alleged annexation of territory within the city of Taft to the Conley School District, the board of supervisors was without any jurisdiction whatsoever; hence that their action in that regard was not a matter attended by irregularity merely, which curative acts might make good, but that it was wholly void. Under provisions of section 1576 of the Political Code, the board of supervisors of Kern County possessed the power to annex the remainder of the school district outside of the corporate limits of Taft to the city district for school purposes; in other words, we have a situation where precisely the same territory might have been properly included within the same school district and governed in precisely the same way by a board of school trustees, with the exception only that the district would bear the name of "Taft" instead of "Conley." The law, as it related to the government of schools embracing territory comprised within municipal limits of cities of the sixth class, at the times here concerned was different than that where the city was of higher grade in point of classification. "Under

the code system the city territory, with its inhabitants, constitutes a mere 'school district' and hence is a corporate body or *quasi*-municipality, distinct from the municipal corporation or city, and is in no way different from the country district in nature or function." (*Board of Education* v. *Board of Trustees*, 129 Cal. 599 [62 Pac. 173].) The court there was referring to cities of the sixth class and called attention to the fact that as to other classes of cities the law was different, and that as to the latter there were city boards of education which constituted a department of the general city government. **[3]** It will be remembered that from and after the incorporation of the city of Taft as a city of the sixth class no separate school district organization was attempted to be maintained. The school trustees for the Conley district were elected jointly by the inhabitants of the city of Taft and those resident in the remaining portion of the district named. The schools continued to be maintained as before the incorporation proceedings were had, and full acquiescence was made, so far as appeared, by all of the inhabitants until this action was brought on December 21, 1921. Hence, if in no better right, the district has at all these times had a *de facto* existence.

**[4]** The proposition that the regularity of the proceedings by which a public corporation of a municipal character has been called into existence cannot be questioned at the suit of an individual citizen or taxpayer is too well settled to admit now of any debate. The reason upon which this holding is founded is far-reaching and admits of no exception. **[5]** In theory, public corporations of any character whatsoever, exercising governmental functions, do so by reason of a delegation to them of a part of the sovereign power of the state. Where they are claiming to act and are actually functioning without having complied with the necessary prerequisites, they are usurping franchise rights as against paramount authority, to complain of which it lies only within the right of the state itself. The attack by the individual is unauthorized, whether it is made in defense of a tax levied to pay existing bonded indebtedness, or whether it be by injunction to prevent the issuance of bonds after an election has been held within the territory affected, authorizing such securi-

ties to be issued.  It may be conceded that, upon the at-
tempted establishment by irregular proceedings of such a
corporation and *before a de facto character has attached,*
*certiorari* will lie at the instance of a citizen or taxpayer to
secure the annulment of such proceedings, as being taken
in excess of jurisdiction, but we have here no such case.
On the general subject that the organization of municipal
corporations is immune from attack by an individual or
in a collateral way, reference may be made to *Coe* v. *City*
*of Los Angeles,* 42 Cal. App. 479 [183 Pac. 822], where a
number of California decisions are cited, and to that list
can be added *Coler* v. *Dwight School Township,* 3 N. D.
249 [28 L. R. A. 649, 55 N. W. 587]; *People ex rel. Scraf-*
*ford* v. *Board of Supervisors,* 41 Mich. 647 [2 N. W. 904];
*People ex rel. Quisenberry* v. *Ellis,* 253 Ill. 369 [Ann. Cas.
1913A, 589, 97 N. E. 697]; *Blackwell* v. *Newkirk,* 31 Okl.
304 [Ann. Cas. 1913E, 441, 121 Pac. 260]; *Kuhn* v. *City*
*of Port Townsend,* 12 Wash. 605 [50 Am. St. Rep. 911, 29
L. R. A. 445, 41 Pac. 923]; *Arapahoe Village* v. *Albee,* 24
Neb. 242 [8 Am. St. Rep. 202, 38 N. W. 737]; *State* v.
*Bailey,* 106 Minn. 138 [130 Am. St. Rep. 592, 16 Ann. Cas.
338, 19 L. R. A. (N. S.) 775, 118 N. W. 676]; *Topeka* v.
*Dwyer,* 70 Kan. 244 [3 Ann. Cas. 239, 78 Pac. 417]; *People*
v. *Ellis,* 253 Ill. 369 [Ann. Cas. 1913A, 589, 97 N. E. 697].
In some cases it has even been held that the state itself,
by long recognition of a *de facto* municipal organization,
may be estopped from attacking the regularity of the pro-
ceedings by which it was formed.  (*People ex rel. Attorney*
*General* v. *Alturas County,* 6 Idaho, 418 [55 Pac. 1067];
*State ex rel. Young* v. *Harris,* 102 Minn. 340 [12 Ann. Cas.
260, 13 L. R. A. (N. S.) 533, 113 N. W. 887].)  In the
case of *Hamilton* v. *County of San Diego,* 108 Cal. 273 [41
Pac. 305], the court sustained the acts of a school district
having a *de facto* existence only and in the course of the
discussion laid emphasis upon the fact that the *de jure* dis-
trict, to wit, municipality, within the limits of which the
*de facto* district was situated, had "abdicated its functions,
at least not attempting to discharge them within those
limits."  And the court went on to say: "There was ac-
quiescence not merely by the San Diego school district
but by the county and state in the assumption of such
corporate prerogatives by the new district; the county offi-

cers - levied and collected taxes in its behalf, and there was apportioned to it, and it expended school moneys of both the county and state in like manner as other school districts in the county.'' The plaintiff there was denied the right to maintain an action to recover back taxes paid to the *de facto* district. There is a close analogy between plaintiff's position and that of a litigant before a *de facto* judge. It is clearly established that the parties affected by the acts of such an officer cannot question their validity or object to the proceedings. As was said in *Mayor and City Council of Nashville* v. *Thompson,* 80 Tenn. (12 Lea) 344: "He [the *de facto* judge] may be removed from office and his powers terminated by proper proceedings . but until that is done his acts are binding. The jurisdiction and authority of an officer *de facto,* although he may be ineligible to the office, cannot be questioned or inquired into in this manner, and his authority is complete and his official acts valid and binding until he is removed in the manner prescribed by law." And also *In the Matter of Danford,* 157 Cal. 425 [108 Pac. 322], where the court said: "The fact, if it had been a fact, that the judge presiding at the trial was an alien and therefore ineligible, made him none the less a *de facto* officer. His right to the office could be questioned only in proceedings regularly instituted for that purpose. It could not be attacked collaterally by motion to set aside his official acts. (*People* v. *Sassovich,* 29 Cal. 480; *People* v. *Hecht,* 105 Cal. 621 [45 Am. St. Rep. 96, 27 L. R. A. 203, 38 Pac. 941].)'' The reason is found in the rule of public policy which is as fully applicable where a public agency of governmental nature like a school district is concerned as where the proceedings of a judicial tribunal are in question. [6] It follows as a necessary conclusion that the bonds referred to may be legally issued and that when sold they will represent binding obligations against all of the property of the *de facto* district. Other questions presented in the briefs of counsel all turn upon the decision of the propositions already discussed and require no separate consideration.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.