**CITY OF GALENA PARK et al. v. CITY OF HOUSTON.**

No. 10953.

Court of Civil Appeals of Texas. Galveston.

Oct. 19, 1939.

Rehearing Denied Nov. 16, 1939.

James G. Donovan and Wilmot F. Warner, both of Houston, for appellants.

Sewall Myer, City Atty., and Vernon Coe, A. L. Lewis, and Will Sears, Asst. City Attys., all of Houston, for appellee.

GRAVES, Justice.

On April 18, 1913, the City of Houston, by an ordinance in all respects appropriating such power to do that as was granted it (a duly qualified city) under a general law of the State passed March 17, 1913, now appearing as Chapter 14, Title 28, or Articles 1183 to 1187, inclusive, of the Revised Statutes of Texas, extended its boundaries for an air-line distance of 20 miles from its then eastern limit-line down and along Buffalo Bayou and the Houston Ship Channel, so as to include within the City for that distance such navigable stream, together with the land adjoining it on both sides for 2500 feet each way, from the threads thereof.

Thereafter, in 1935, the City of Galena Park, a small town incorporated under the general law, and pursuant to the statutes authorizing such municipalities in prescribed manner and circumstances to enlarge their boundaries, undertook to incorporate and include within its limits for general purposes a portion of the land so contiguous to Buffalo Bayou and the Houston Ship Channel that had theretofore been annexed to and appropriated by the City of Houston, under the ordinance referred to.

This cause, as between these two cities—the appellant and the appellee—both below and here, involved the single question as to which one of them had jurisdiction and control over that portion of the ship channel strip the appellant thus undertook to include within its own corporate limits.

The effect of the judgment of the trial court, from which this appeal proceeds, after the elimination of other issues and parties, was to hold that the stated effort of Galena Park to incorporate into its limits (and thereafter to control) that portion of the land lying within the previously incorporated larger strip by the City of Houston was abortive, null, and void, because the City of Houston had so acquired prior and exclusive jurisdiction and control thereof.

The rival claims to the disputed territory—that of the City of Houston being first in time, and all the other facts being undisputed—are thought to depend upon the construction that should be given cited Chapter 14, Title 28, of our Revised Statutes, headed "Cities on Navigable Streams"; its enactment in 1913, Acts 1913, c. 25, was attended by an emergency clause thus further enunciating the intent and objective of the Legislature in passing it:

"Sec. 3. The fact that there is now no law vesting in the larger cities of the State, situated upon navigable streams, the authority and power to efficiently provide navigation, wharfage and facilities therefor, and to regulate same, creates an emergency and an imperative public necessity, that the constitutional rule requiring bills to be read on three several days be suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

As before indicated, the City of Houston, being then situated upon the navigable stream of Buffalo Bayou, and being in existence under a special charter, one month after its passage adopted the necessary ordinance and thereby took advantage of such newly declared public policy of the state, then extending its jurisdiction over the 20-mile strip—inclusive of the portion here in controversy—and has ever since maintained and exercised it.

This prompt action was apparently in consonance with the Legislature's expressed view—in the quoted emergency clause recitation—that such a vesting of power in the larger cities of the state was even then "an imperative public necessity". It must, therefore, have been intended to thereby vest in the cities so situated effective power to thereafter "efficiently provide navigation, wharfage and facilities therefor, and to regulate same."

When the detailed provisions of the Act are looked to, such policy seems all the more plain, the specific purposes being set out in these four successive Articles Nos. 1183 to 1186, inclusive. There is then appended Article 1187, which, though last in order, is worthy of mention first as reflecting clear light upon what was intended in the preceding four. It runs as follows:

"The power granted in the four preceding articles shall not authorize the extension of the territory of any city for the limited purposes named so as to include any land which is already part of any other city or town corporation whether incorporated under the general laws or under special law, or any land at the time belonging to any other city or town."

Thus by express interdiction the City of Houston in 1913, when it came to so extend its limits, could not have included therein the portion here involved, had it already been incorporated into the City of Galena Park; by the same token, it would seem that in 1935, when the City of Galena Park in turn came seeking the same territory, it was likewise precluded from taking it in, because of its special incorporation and appropriation by the City of Houston 22 years before.

Undisputedly, as already recited, the City of Houston in 1913 was eligible under the first Article of this Act to take advantage of its privileges as a city located upon a navigable stream, and acting under a special charter, and it did so, conforming its ordinance in all respects to the statute, thereby in fact acquiring over this 20-mile by 5000-foot-strip of land along its ship channel all the power that was vested in it by that legislation.

By the next Article 1184, it is affirmatively given the express power to "secure all the land" within the added territory by purchase, condemnation as for streets, or gift, for these two purposes: " [1] for the improvement of the navigation of said navigable streams or waters either by the United States or by said city, or by any navigation or other improvement district, and [2] for the purpose of establishing and maintaining wharves, docks, railway terminals, side tracks, warehouses or any other facilities or aids whatsoever to either navigation or wharves."

By Article 1185, the legislative sanction is given to the inclusion of the whole of the abutting strips of land when the ordinance has been duly passed, and the City is prohibited from taxing the property so taken in, "unless such property is within the line and within the limits of the general city boundaries or limits."

Article 1186 constitutes an affirmative and express grant of exclusive jurisdiction and authority thereafter over such added territory, in this language:

"After the passage of the ordinance adding said territory to said city, said city shall have and exercise the fullest and most complete power of regulation of navigation and of wharfage and of wharfage rates and of all facilities, conveniences and aids to wharfage or navigation consistent with the Constitution of this State, and shall further have authority by criminal ordinances or otherwise, to police the navigation of said waters and the use of said wharves and facilities and aids to wharfage and navigation."

■■ Contrary to the opposing contentions of the appellant, it is concluded that the objective, intent, and accomplishment of the Legislature in the enactment of this statute—despite the recitation in Article 1183 thereof that the extension of the City's limits should be "for the limited purpose named in the four succeeding articles" —was to authorize the placing of a pro bono publico servitude for navigation purposes on the land so annexed by a city— that is, to thereby preempt or earmark the same for those purposes—to the exclusion thereafter of any control thereof by another city or town; to that end, the right to "secure" or to appropriate the whole terrain itself for such uses, after it had been reduced to possession in the usual and customary way in such circumstances—that is, "by purchase, condemnation, or gift"—was

apparently contemplated, if that became necessary to the navigation of the stream; if this be true, the right to thus secure and appropriate the whole of the land itself for navigation purposes, when exercised and so long as maintained, would necessarily exclude its subsequent appropriation for a governmental purpose by another municipal authority; hence there could not be two co-existent uses by two different cities for different purposes, as appellant so earnestly argues, because the Legislature had thus expressly withdrawn the land so dedicated and committed to the furtherance of navigation from the operation of the general law merely authorizing incorporated cities and towns like appellant to extend their boundaries; consequently, appellant's argument and cited authorities to the effect that this statute only granted the City of Houston special and limited powers for navigation purposes over the disputed territory, and did not interfere with its co-existent use by appellant for all other general governmental purposes, all become inapplicable.

On the contrary, since the statute does, by necessary effect, so negate the passing of any such claimed right to other cities and towns under the general law of their creation, and, at the same time affirmatively does confer exclusive jurisdiction over the territory upon eligible annexing cities, the well settled principle that two municipal corporations cannot have co-existent control over the same territory and contemporaneously exercise essentially the same governmental powers in it applies. Strosser v. City, 100 Ind. 443; Taylor v. City, 47 Ind. 274; President of City of Paterson v. Society, 24 N.J.L. 385; Beyer v. City of Athens, 6 Cir., 249 F. 849; People v. Board, 41 Mich. 647, 2 N.W. 904; Weatherwax v. Grays Harbor, 116 Wash. 212, 199 P. 303; Maulding v. Skillett, 313 Ill. 216, 145 N.E. 227; People ex rel. v. Baldridge, 267 Ill. 190, 108 N.E. 49; People ex rel. v. Lease, 248 Ill. 187, 93 N.E. 783.

■ It also follows as a corollary, from the construction herein given the Act under review, that appellant's initial objection to the effect that its own incorporation could not be called into question, as was done in this proceeding, without the joinder of the State under a writ of quo warranto, is unsound; this, for the reason that its attempt to incorporate that portion of the territory already lying within such special limits of the City of Houston—

being in contravention of a general law of the State—was wholly invalid and void, thereby subjecting such pseudo-incorporation to collateral attack without the joinder of the State. City of Port Arthur v. Gaskin, Tex.Civ.App., 107 S.W.2d 610; Hunt v. Atkinson, Tex.Com.App., 12 S.W.2d 142.

It follows from these conclusions that the trial court's judgment should be affirmed; it will be so ordered.

Affirmed.