(No. 15482.—Reversed and remanded.)

W. B. MAULDING *et al.* Plaintiffs in Error, *vs.* THE SKILLET FORK RIVER OUTLET UNION DRAINAGE DISTRICT, Defendant in Error.

*Opinion filed October 28, 1924.*

1. CONSTITUTIONAL LAW—*when section may be added to an act without reprinting entire act.*    A section or sections may be added to an act for a separate and distinct purpose, and the constitution does not require any part of the act to which the section or sections are added to be printed at length in the amendatory act, where there is no change made in the general law except the addition of said section or sections.

2. DRAINAGE—*section 65a of Levee act does not illegally amend the general law.*    Section 65a of the Levee act is intended for the separate and distinct purpose of creating outlet drainage districts for the improvement of rivers, streams and water-courses into which drainage districts empty their drains so as to make more efficient outlets for the districts and the unorganized lands, and said section is not an amendment to the Levee act within the meaning of the constitutional prohibition against reviving or amending a law by reference to its title, only.

3. SAME—*section 65a of the Levee act does not grant exclusive privileges.*    Section 65a of the Levee act, providing for the creation of outlet drainage districts, does not violate the provision of the constitution against granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise, as there is no special privilege granted to anyone or special

burden or restriction imposed nor any discrimination against persons or classes.

4. SAME—*formation of drainage districts rests in discretion of legislature.* The formation of drainage districts is committed to the wisdom and discretion of the legislature, which may define the situations and conditions under which such districts are to be organized for the public good.

5. SAME—*a drainage law is not a special law expressly prohibited by the constitution.* Laws for the organization of drainage districts do not come within the enumeration of local or special laws prohibited by section 22 of article 4 of the constitution.

6. SAME—*section 65a of Levee act is not invalid as not being reciprocal.* Section 65a of the Levee act, providing for the creation of outlet drainage districts including different districts as well as unorganized lands, is not subject to the objection that its provisions are not reciprocal, as such a district cannot make any assessments for any purpose except to deepen or otherwise improve the channel constituting the outlet and must pay for the ditches, levees or drains appropriated or destroyed. (*Bay Island Drainage District* v. *Union Drainage District,* 255 Ill. 194, distinguished.)

7. SAME—*section 65a of the Levee act does not create separate municipal corporations over same territory.* Section 65a of the Levee act, providing for the creation of an outlet drainage district including other districts and unorganized territory, does not authorize two separate municipal corporations to exercise sovereignty over the same territory at the same time for the same purpose, as the outlet district can only exercise power for the improvement of the outlet and assess lands for benefit derived therefrom.

8. SAME—*jurisdiction of county court is statutory and must appear from record.* The jurisdiction of the county court in organizing a drainage district is purely statutory, and no presumptions are indulged in favor of jurisdiction but every essential fact must appear affirmatively from the record.

9. SAME—*what is not a sufficient finding of jurisdiction to organize outlet district—curative act.* The county court in organizing an outlet drainage district under section 65a of the Levee act does not make a sufficient finding to confer jurisdiction where it fails to find, both in its preliminary and in its final order, that the work is necessary or will be useful for the lands to be included in the outlet district, and the curative act of 1923 (Laws of 1923, p. 338,) cannot operate to validate the district, as the proceedings for organization without such essential findings are void.

10. STATUTES—*curative act cannot validate a void proceeding.* The legislature cannot by a curative act make a void proceeding valid.

WRIT OF ERROR to the County Court of Wayne county; the Hon. W. S. WILHITE, Judge, presiding.

MILLS & FORTH, CONGER & ELLIOTT, HARRY ANDERSON, J. H. LANE, and DOBBINS & DOBBINS, (DONALD C. DOBBINS, of counsel,) for plaintiffs in error.

WILLIAM T. BONHAM, and THOMAS H. CREIGHTON, for defendant in error.

CHARLES WHAM, FRED L. WHAM, EDWARD C. CRAIG, DONALD B. CRAIG, and FRED H. KELLY, *amici curiæ.*

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The county court of Wayne county on May 12, 1921, entered a judgment declaring the Skillet Fork River Outlet Union Drainage District duly organized according to law. The boundaries of the district included lands in Wayne, Hamilton and White counties. W. B. Maulding, an owner of lands in the district, and the Haw Creek Special Drainage District of Hamilton county, sued out this writ of error to review the record.

The Skillet Fork River Outlet Union Drainage District was declared organized under an act amending the Levee act by adding to it a section numbered 65*a*. That section (Laws of 1917, p. 365,) provides: When any river or other stream or water-course in this State constitutes the common outlet for two or more drainage districts organized under any of the laws of this State and also for lands not organized into a drainage district, and when it will be a benefit to the lands included in the drainage districts and to the lands not so included but having the river or water-course as the outlet for drainage for agricultural or sanitary purposes, that the river, water-course or other stream, or any portion thereof, constituting such common outlet, be

deepened, widened or otherwise improved or that the channel thereof be changed or straightened, an outlet drainage district may be organized in the manner provided in the act for the organization of drainage districts, and all lands thereby benefited may be included within the boundaries of such outlet drainage district. It shall not constitute any objection to the inclusion of any lands that they have been theretofore included in a drainage district organized under the provisions of any law of the State. Commissioners of outlet drainage districts are appointed at the time and in the manner and possess the qualifications prescribed in the Levee act, and, except as limited, have like powers and duties. Special assessments may be levied on the property included in the district which will be benefited by the work proposed, in the same manner as assessments are provided in levee districts to pay the cost of such work. Neither an outlet drainage district nor its officers shall have any right to make any assessments for any purpose except to deepen, widen, change, straighten or otherwise improve the channel of the river or water-course constituting the outlet for the drainage of the lands included in the outlet drainage district nor to construct any other drainage work. Except as to certain restrictions, all the provisions of the Levee act with reference to drainage districts shall apply to outlet drainage districts organized under the section. When it becomes necessary, an outlet drainage district may acquire right of way within or without the boundaries of a drainage district theretofore organized for an improvement constructed by it, in the same manner as drainage and levee districts organized under the Levee act may acquire right of way. No outlying drainage district organized under this section shall remove, destroy, appropriate or use any levee, drain, ditch or part thereof, or other work of any drainage district organized under any law of the State, without paying such district just compensation therefor; and in case the commissioners shall be unable to agree upon the compen-

sation to be paid, the same may be ascertained and enforced by proper proceedings in any court of competent jurisdiction, and upon payment of such compensation the outlet district shall have the right to appropriate such levees, ditches, drainage or other work within the boundary of such outlet drainage district for and in connection with the purposes for which the outlet district was organized.

Plaintiffs in error contend that section 65*a* violates various constitutional provisions and furnishes no basis for the organization of the district. The first section of the constitution pointed out is section 13 of article 4, which provides that no law shall be revived or amended by reference to its title, only, but requires that the law revived or the section amended shall be inserted at length in the new act. It is a common and unobjectionable practice to add a section or sections to an act for a separate and distinct purpose, and the constitution does not require any part of the act to which the section or sections are added to be printed at length in the amendatory act where there is no change made in the general law except to add a section or sections. (*People* v. *Edmands,* 252 Ill. 108; *People* v. *Exton,* 298 id. 119; *People* v. *Moyer,* id. 143; *Bishop* v. *Chicago Railways Co.* 303 id. 273.) But it is argued that section 65*a* does not come within the rule because it does not merely add independent provisions to the Levee act but changes that act in the following particulars: (1) It amends section 51 by permitting the lands of a drainage district to be again assessed for the purpose of improving the lands of a drainage district lying above the lands assessed; (2) it amends the act by excluding the power of the districts organized under the act to construct and maintain levees; (3) it amends the act prohibiting the formation of sub-districts to afford more complete drainage; (4) it amends the act by prohibiting the acquisition of dredging boats by districts; (5) it amends the provision authorizing adjoining districts to construct a joint pumping station, joint levees

or other works; (6) it amends the provisions authorizing any district to construct and maintain one or more pumping plants; (7) it amends the provision authorizing commissioners of districts to control the improvement of their own outlets; and (8) it amends the act by creating a drainage district exempt from the provisions in regard to adjoining drainage districts.

Section 65*a* is not subject to any of these objections. The declared purpose is to create outlet drainage districts for the improvement of rivers, streams and water-courses into which drainage districts empty their drains so as to make the same more efficient outlets for the districts and the unorganized lands. The outlet districts provided for are not authorized to exercise jurisdiction over the lands included in drainage districts, and they are not created for the same purpose as districts organized for local drainage. The section does not change or modify any provision of the Levee act and does not purport by its language to make any change, but only authorizes the creation of different districts for a separate purpose. It does not permit the lands of a drainage district to be again assessed for the purpose of improving local drainage in districts lying above the lands assessed nor exclude the power of districts organized under the act to construct and maintain levees. It in no manner prohibits the formation of drainage districts for more complete drainage but only provides for a better outlet. It does not prohibit the acquisition of dredging boats, nor prevent adjoining districts from constructing a joint pumping station, joint levees or other works, nor limit them in that respect. Any district organized under the Levee act may continue to construct and maintain in operation, as a part of its work, one or more pumping plants. It does not purport to control commissioners of drainage districts in the improvement of their own outlets into the common outlet, or exempt the outlet districts from the provisions of the act in regard to adjoining drainage

districts. The common outlet for the local districts and un-
organized lands is not for the purpose of furnishing drain-
age to the lands, and the section does not violate the pro-
hibition against reviving or amending any law by reference
to its title, only.

It is also contended that section 65a violates the prohi-
bition of section 22 of article 4 against granting to any
corporation, association or individual any special or exclu-
sive privilege, immunity or franchise whatever. The sec-
tion is not subject to that objection. There is in the act
perfect equality of rights, privileges and capacities of cor-
porations, associations and individuals. There is no special
privilege granted to anyone or special burden or restriction
imposed on anyone, nor any discrimination against persons
or classes. The formation of drainage districts is commit-
ted to the wisdom and discretion of the legislature, which
may define the situations and conditions under which drain-
age districts are to be organized for the public good. Laws
for the organization of such districts are not enumerated
in section 22 of article 4 of the constitution and are not
included in the prohibition against passing local or special
laws. *Owners of Lands* v. *People,* 113 Ill. 296; *Wilson* v.
*Board of Trustees,* 133 id. 443; *People* v. *Bowman,* 247
id. 276.

It is further argued that the act is void for the reason
that its provisions are not reciprocal, and the case of *Bay
Island Drainage District* v. *Union Drainage District,* 255
Ill. 194, is relied upon to sustain the argument. In that
case an act purporting to authorize lower districts to re-
cover from upper districts the benefits accruing from the
works of the lower districts was held void because it did
not authorize recovery by an upper district for benefits to
a lower district of the same kind and character and gave
to one district a right and denied the same right to the
other. No such situation exists or could exist under sec-
tion 65a, where the lands of the whole outlet drainage dis-

trict are to be assessed for the benefits conferred upon them by the outlet and the assessment is limited to such benefits. By the act the outlet drainage district is to have no right to make any assessments for any purpose against any of the lands in the district except to deepen or widen or otherwise improve the channel of the river or water-course constituting the outlet. The provision that the outlet district in making and improving the outlet may remove, destroy, appropriate or use any levee, drain, ditch or part thereof, or other work of any drainage district organized under the laws of this State, will not allow any change, appropriation or destruction except for the improvement of the outlet drainage, and the right is only given upon paying just compensation, ascertained according to law. No right is destroyed by taking property for public use upon payment of just compensation.

Section 65*a*, it is further contended, is void for the reason that it attempts to authorize two separate municipal corporations to exercise sovereignty over the same territory at the same time for the same purpose. There cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges. (1 Dillon on Mun. Corp.—5th ed.— sec. 354; *People* v. *Lease,* 248 Ill. 187; *Sny Island Drainage District* v. *Dewell,* 256 id. 126; *People* v. *Baldridge,* 267 id. 190; *Sny Island Drainage District* v. *Boyd Levee District,* 273 id. 533.) Section 65*a* does not authorize two separate municipal corporations to exercise sovereignty over the same territory at the same time for the same purpose. The outlet district can only exercise power for the improvement of the outlet and assess lands for the benefit derived therefrom.

Complaint is made that the orders of the county court in the proceeding to organize the district omitted certain jurisdictional findings and that in consequence the orders are void. In the organization of drainage districts county

courts exercise a statutory jurisdiction, in support of which no presumptions are indulged. They derive their power to establish such districts solely from the statute, and every fact essential to their jurisdiction must appear affirmatively from the record. (*Merkle Drainage District* v. *Hathaway,* 260 Ill. 186; *Aldridge* v. *Clear Creek Drainage District,* 253 id. 251; *People* v. *Karr,* 244 id. 374; *Payson* v. *People,* 175 id. 267; *Wayne City Drainage District* v. *Boggs,* 262 id. 338; *Spring Creek Drainage District* v. *Highway Comrs.* 238 id. 521.) Section 5 of the Levee act provides, if the court, after hearing all competent evidence that may be offered for and against the petition, shall find that it has not been signed as required, the petition shall be dismissed, but if the court shall find that it has been signed in compliance with the act, such finding shall be conclusive upon the land owners of the district that they have assented to and accepted the provisions of the act; and if it shall further appear to the court that the proposed work is necessary or will be useful for the drainage of the lands to be drained thereby, for agricultural, sanitary or mining purposes, the court shall so find and appoint three competent persons as commissioners. There is no finding in the preliminary order that the proposed work is necessary or will be useful for any purpose. The county court in that order recited that the matters and things stated in the petition were true as therein set forth. Such a recital is merely a conclusion and is not a compliance with the statute. Section 16 of the Levee act prescribes the requirements of the final order to be entered in the organization of a drainage district under the act. These requirements must be substantially followed, and, among others, are, that if additional lands are brought into the proposed district, as the record shows was done in this case, the giving of notice to the owners of such lands must appear; and the court must find

that the work proposed to be done will be useful, for agricultural, sanitary or mining purposes, to the owners of lands within the proposed district, and that the persons who signed the petition are of lawful age and are a majority of the adult land owners representing one-third in area, or one-third of the adult land owners owning a major portion, as the case may be, of the land to be affected by such proposed work. None of these essential findings was contained in the final order which declared the district organized. Their omission is not merely irregular but jurisdictional, and without them there could be no valid organization of the district.

But it is contended that the act of June 28, 1923, (Laws of 1923, p. 338,) which purports to validate the organization of outlet drainage districts, cured any defect in the organization of the district in question. The legislature cannot by a curative act make void proceedings valid. (*Roberts* v. *Eyman,* 304 Ill. 413.) Before a drainage district can be organized under the Levee act the judicial determination of the existence of certain facts is essential. The lack of these jurisdictional findings is fatal to the organization of a drainage district under the act. Moreover by its express terms the validating act does not include the district under consideration here, because it was not "organized by an order of court heretofore entered under the provisions" of the Levee act. The final order which purports to establish the district was not entered in conformity with that act, for it omitted the finding of facts essential to jurisdiction, and these findings could not be dispensed with by a curative act. *Funkhouser* v. *Randolph,* 287 Ill. 94.

The judgment of the county court is reversed and the cause remanded.

*Reversed and remanded.*